850 So.2d 435 (2003)
STATE of Florida, Petitioner,
v.
Johnny DIAZ, Respondent.
No. SC01-2779.
Supreme Court of Florida.
May 15, 2003.
Rehearing Denied July 15, 2003.
*436 Charles J. Crist, Jr., Attorney General, Robert J. Krauss, Senior Assistant Attorney General, Chief of Criminal Law, and Susan D. Dunlevy, Assistant Attorney General, Tampa, Florida, for Petitioner.
James Marion Moorman, Public Defender, and Carol J.Y. Wilson, Assistant Public Defender, Tenth Judicial Circuit, Bartow, Florida, for Respondent.
LEWIS, J.
We have for review the decision in Diaz v. State, 800 So.2d 326 (Fla. 2d DCA 2001), which certified conflict with the decisions in State v. Wikso, 738 So.2d 390 (Fla. 4th DCA 1999), and State v. Bass, 609 So.2d 151 (Fla. 5th DCA 1992). We have jurisdiction. See art. V, § 3(b)(4), Fla. Const. Because the law enforcement officer here had no justification for continuing the restraint of this motorist and obtaining information from him after it was clearly determined that no question remained concerning a violation of law or the validity of the car's temporary license plate, we approve the holding in Diaz. The alleged justification for the continuing detention was found to be clearly erroneous, admittedly removed, and without foundationreasonable or otherwise.
The lower court detailed the relevant facts:
A Hillsborough County Deputy Sheriff observed a vehicle driven by Diaz pass by with a temporary tag on the top of the rear window. Because he could not read the tag, the deputy initiated a traffic stop. At the suppression hearing, the deputy testified that as he approached the car he could clearly read the tag including the expiration date and found nothing improper. He walked up to the driver's side of the car and obtained information from Diaz, the driver, which ultimately led to the charge against Diaz of felony driving with a suspended license.
Diaz, 800 So.2d at 326-27. The district court of appeal then held that once the officer had found the temporary tag to be proper, no further stop, detention, or inquiry was justified. See id. at 327. Under very similar facts, the appellate courts in both Bass and Wikso have held that once a vehicle is properly stopped, a law enforcement *437 officer may continue the investigation and ask to see the driver's license and registration. See Bass, 609 So.2d at 152; Wikso, 738 So.2d at 390. Based upon the facts presented in this case, and upon consideration of the jurisprudence of this Court and the United States Supreme Court interpreting the Fourth and Fourteenth Amendments to the United States Constitution and article I, section 12 of the Florida Constitution, the district court of appeal in Diaz reached the proper conclusion on the totality of the facts presented.
It is undisputed that the stopping of an automobile by a law enforcement officer constitutes a seizure and detention within the meaning of the Fourth Amendment to the United States Constitution. See Delaware v. Prouse, 440 U.S. 648, 653, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979); State v. Jones, 483 So.2d 433, 435 (Fla.1986). Although premised upon the very slimmest of rationales, the initial stop here was asserted to be valid based upon the officer's inability to read the expiration date on Mr. Diaz's temporary license plate. The Florida statute regulating temporary license tags provided: "Temporary tags shall be conspicuously displayed in the rear license plate bracket or attached to the inside of the rear window in an upright position so as to be clearly visible from the rear of the vehicle." § 320.131(4), Fla. Stat. (2000) (emphasis added). While the Legislature has required that permanent license plates must be "plainly visible and legible at all times 100 feet from the rear or front," § 316.605(1), Fla. Stat. (2000), the Legislature has failed to mandate a distance at which temporary tags must be fully legible. Notably, the temporary tag statute does not specifically require that the expiration date be legible, and it is the State itself which creates and issues the temporary license tag. See § 320.131(1), (4), Fla. Stat. (2000). The law enforcement officer here used the arguably illegible state-issued temporary tag as a tool for detention, and despite the fact that the driver had no control over the legibility of the expiration date, we assume for the purposes of this case that the initial stop by the deputy sheriff was legitimate, albeit based upon a barely justifiable purpose. With that assumption, we must turn our attention to the actions of the law enforcement officer following the initial stop and upon the further clear confirmation that no possible violation existed.
At the outset, it must be recognized that it is without question that before the personal encounter between Mr. Diaz and the deputy sheriff occurred, the initial alleged purpose for the stop had been satisfied and removed. It is undisputed that the law enforcement officer who made this stop because he was allegedly unable to read the expiration date on the vehicle's temporary tag, was in fact able to read the date upon approaching the car, and was totally satisfied that the temporary tag was valid and no further question remained. Therefore, when the deputy first made personal contact with Mr. Diaz, he was without probable cause, reasonable or articulable suspicion, or any other type of cause to believe or consider that any violation had occurred or was occurring.
In Delaware v. Prouse, the United States Supreme Court held that police officers may not, without violating the Fourth Amendment, randomly stop automobiles to check the validity of the driver's license and registration. See Prouse, 440 U.S. at 663, 99 S.Ct. 1391. There, the high Court wrote:
Accordingly, we hold that except in those situations in which there is at least articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise *438 subject to seizure for violation of law, stopping an automobile and detaining the driver in order to check his driver's license and the registration of the automobile are unreasonable under the Fourth Amendment.... We hold only that persons in automobiles on public roadways may not for that reason alone have their travel and privacy interfered with at the unbridled discretion of police officers.
Id. Following the holding in Prouse, the Court further articulated that under the Fourth Amendment, a citizen "may not be detained even momentarily without reasonable, objective grounds for doing so." Florida v. Royer, 460 U.S. 491, 498, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983) (plurality opinion). Additionally, the Court wrote: "The scope of the detention must be carefully tailored to its underlying justification.... [A]n investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop." Id. at 500, 103 S.Ct. 1319; see also Cresswell v. State, 564 So.2d 480, 481 (Fla. 1990) (holding a traffic stop may last no longer than the time it takes to write a citation).
Under Prouse and Royer, it appears that once a police officer has totally satisfied the purpose for which he has initially stopped and detained the motorist, the officer no longer has any reasonable grounds or legal basis for continuing the detention of the motorist. Here, as soon as the officer determined the validity of Mr. Diaz's temporary tag, he no longer had reasonable grounds or any other basis, legal or otherwise, to further detain Mr. Diaz. Having completely ascertained the validity of the temporary license plate, the law enforcement officer no longer had any cause or suspicion supporting the existence of a traffic or any other violation. Further, under the facts presented here, he certainly had no articulable or reasonable suspicion to support the detention of Mr. Diaz. There was nothing whatsoever questionable about the vehicle or those persons in the vehicle and there simply was no hint of any criminal activity. While the officer's reason for the initial stop may arguably have been legitimate, once that bare justification had been totally removed, the officer's actions in further detaining Mr. Diaz equated to nothing less than an indiscriminate, baseless detention, not unlike that held to be inappropriate and unconstitutional by the United States Supreme Court in Prouse. The continued detention of Mr. Diaz after full knowledge had been acquired that totally removed any articulated question constituted an infringement upon his Fourth Amendment rights. To hold otherwise would permit law enforcement officers to randomly stop any and all vehicles having a temporary license plate designed and created by the State and conduct a further examination and interrogation of the driver, and later justify the stop by simply claiming the tag, a product created by the State, was unreadable. Such random stops and extended detentions, having no basis, are unconstitutional under Prouse.
Additionally, even if the extension of such stops were valid under Prouse, clearly under Royer such detention must be limited to satisfying the purpose for the initial intervention. Here, the officer stopped Mr. Diaz only because he was allegedly unable to read the expiration date on the temporary license plate. Clearly, this was not a consensual stop and detentionit occurred only after a show of authority by the law enforcement officer. Upon approaching the vehicle and prior to personal contact, the deputy was able to read the tag, which was in a proper location, and clearly determine it to be valid. Therefore, under Royer, when the officer clearly determined the validity of the tag, *439 the purpose for the stop was satisfied, and the continued detention of Mr. Diaz was improper. The investigative procedures and personal examination, requiring the production of further information, was beyond that which was necessary or reasonable to satisfy the stated purpose of the stop. Before the personal encounter ever occurred the officer had totally and completely satisfied the purpose for the stop.
Several courts have held that once the initial purpose of a stop has concluded, a law enforcement officer may not continue to detain the operator of the vehicle. In United States v. McSwain, 29 F.3d 558 (10th Cir.1994), the court held an officer violated the Fourth Amendment when he further questioned a motorist and requested his license and registration after he had already determined the validity of the car's temporary registration sticker. The court reasoned that the officer no longer had reasonable, articulable suspicion that illegal activity had occurred, and therefore his actions exceeded the limits of a lawful investigation. See id. at 561-62; see also People v. Redinger, 906 P.2d 81, 86 (Colo. 1995) ("The purpose of the initial investigation having been satisfied, and in the absence of any other basis for detention or questioning of Redinger, [the officer's] conduct in requiring Redinger to produce information without either reasonable suspicion or probable cause was unwarranted."). Similarly, the Ohio Supreme Court has held that detaining a driver and requesting his license and registration after the officer had determined the validity of the car's temporary tag was "akin to the random detentions struck down by the Supreme Court in Delaware v. Prouse." State v. Chatton, 11 Ohio St.3d 59, 463 N.E.2d 1237, 1240 (1984).
We recognize that other courts have held that an officer may approach the driver and ask to see the driver's license and registration even after the officer has satisfied the initial purpose of the stop. See, e.g., United States v. Elmore, 304 F.3d 557, 559 (6th Cir.2002) (holding no Fourth Amendment violation where officer searched the car after the initial purpose for stopping the carverifying the car's license platehad been satisfied); State v. Hill, 606 A.2d 793, 795 (Me.1992) (balancing the significant state interest against the minimal intrusion of asking for the documents and finding no Fourth Amendment violation). However, we find the reasoning of the Tenth Circuit Court of Appeals and the Supreme Courts of Colorado and Ohio more persuasive. The directives of the United States Supreme Court in Prouse and Royer control here, and must be followed.
The Fourth Amendment mandates that citizens remain free from unlawful searches and seizures by law enforcement officers. The real test is one of reasonableness, which involves balancing the interests of the State with those of the motorist. Here, the basis for the stop regulation of motor vehicle operationsatisfied a legitimate state interest. However, the officer continued to detain the driver after the reason for the stop had been completely satisfied. Obviously one can debate the issue as to what constitutes a reasonable detention, but unquestionably, an endless variety of encounters and detentions are possible after a law enforcement officer stops a vehicle under facts such as these. It would be dangerous precedent to allow overzealous law enforcement officers to place in peril the principles of a free society by disregarding the protections afforded by the Fourth Amendment. To sanction further detention after an officer has clearly and unarguably satisfied the stated purpose for an initial stop would be to permit standardless, unreasonable detentions and investigations. *440 Further, detentions such as that which occurred here are not sufficiently productive for law enforcement purposes, any more so than the random stops declared unconstitutional in Prouse. Allowing such investigations would result in boundless interrogations by law enforcement officers, unrecognized by the Court before, and also an erosion of Fourth Amendment protections.
Permitting an officer to further detain and interrogate a motorist, after the officer is fully satisfied that the motorist has not committed a violation of the laws of the State of Florida, violates the precepts established in Prouse and Royer. Having verified the total validity of Mr. Diaz's temporary tag, the sheriff's deputy could lawfully make personal contact with Mr. Diaz only to explain to him the reason for the initial stop. Because the sheriff's deputy had no justification for further detention, anything more than an explanation of the stop was a violation of Mr. Diaz's Fourth Amendment rights.
Therefore, the decision of the Second District Court of Appeal is approved on the totality of the facts presented, and to the extent they are inconsistent with this opinion, the Wikso and Bass decisions are disapproved.
It is so ordered.
ANSTEAD, C.J., PARIENTE and QUINCE, JJ., and SHAW, Senior Justice, concur.
PARIENTE, J., concurs specially with an opinion, in which ANSTEAD, C.J., and QUINCE, J., concur.
WELLS, J., dissents with an opinion.
PARIENTE, J., specially concurring.
I agree with the majority's conclusion that the continuation of the detention was illegal. I write separately because I believe that the detention, based on the officer's inability to read the expiration date on the temporary tag, was also unauthorized at its inception.
The officer testified that he was approximately two to three car lengths away, perhaps fifty feet, at 8:42 p.m. on February 14, 2000, when he observed the Diaz vehicle with a temporary tag. The officer stated that although the tag was clearly visible, he stopped the vehicle because he was unable to read the expiration date on the tag. The officer had no other basis to believe that the tag was expired or that Diaz was committing an infraction by an improper display of his temporary tag.
The officer's inability to read the handwritten expiration date on a properly issued, properly displayed and otherwise legible temporary tag did not establish a valid basis for a suspected violation of the temporary tag requirements. Section 320.131(4), Florida Statutes, which governs temporary tags, requires only that the tag "shall be conspicuously displayed in the rear license plate bracket or attached to the inside of the rear window in an upright position so as to be clearly visible from the rear of the vehicle." (Emphasis supplied.) This statute does not contain a requirement that the date of expiration, which is written on the tag at the time it is issued, be legible from any specific distance.[1] To construe section 320.131(4) as requiring that a law enforcement officer be able to read the handwritten expiration date as well as the larger, preprinted identification numbers and letters on a temporary tag would mean that almost every motorist *441 driving a vehicle with a temporary tag would be subject to police detention.
In this case, the officer stated that he could not read the expiration date on the temporary tag from approximately fifty feet away at night, because the handwriting in pen was not dark enough to read until he was closer to the vehicle. This did not constitute sufficient grounds to believe that a violation of the temporary tag statute had occurred. Thus, there was no basis for a stop of Diaz's vehicle.
Assuming that the initial stop was lawful, however, I agree with the majority that once the officer was able to read the tag as he approached the vehicle, the lawful reason for the initial stop concluded. Thus, the police officer had no basis to continue the detention by asking for the driver's license and registration.
ANSTEAD, C.J., and QUINCE, J., concur.
WELLS, J., dissenting.
The majority in this case holds that a police officer with valid justification for initially stopping a driver because of a violation of the temporary tag statute is not justified in obtaining the license and registration of that driver if the officer concludes prior to doing so that the temporary tag does not in fact violate the statute. The majority reasons that such action is barred by the Fourth and Fourteenth Amendments of the United States Constitution. I dissent.
The very basis underlying the protections guaranteed by the Fourth Amendment is reasonableness. Reasonableness, in turn, is measured objectively by examining the totality of the circumstances and can only be judged by the precise facts of a particular case. Ohio v. Robinette, 519 U.S. 33, 39, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996). The circumstances presented in the instant case reveal nothing unreasonable about this officer's conduct.
The majority assumes, as do I, that the initial stop by the police officer was "legitimate." Thus, acting on a reasonable suspicion that the respondent in this case was driving with an invalid temporary tag, the officer initiated a lawful traffic stop. Although the officer subsequently determined that the respondent's temporary tag was in fact valid, the officer merely fulfilled his routine police procedures and obtained identification from the driver. Such an action is a customary and certainly expected occurrence during any regular traffic stop. See, e.g., State v. Ramos, 598 So.2d 267, 269 (Fla. 3d DCA 1992) (holding that police officer may request driver's license to ascertain identity of person during an investigatory stop). Unlike the cases cited by the majority and those relied upon by the district court below, the record in the instant case indicates that the officer did not attempt to do anything other than identify the driver and send him on his way. The officer did not attempt to search the vehicle or to otherwise interrogate the respondent.[2]
*442 The majority fails to consider the context in which this incident arose and the circumstances surrounding the officer's procurement of the respondent's identification. Specifically, the majority extends the Fourth Amendment beyond its natural boundaries of reasonableness by precluding an officer's reasonable fulfillment of his or her duties in carrying out the significant state interest of protecting citizens from unlicensed drivers or unregistered vehicles. In Delaware v. Prouse, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979), the United States Supreme Court recognized that the inspection of licenses and registration papers is the most effective way to ensure that only those qualified to do so are permitted to operate a motor vehicle. See id. at 658-59, 99 S.Ct. 1391 ("Vehicle stops for traffic violations occur countless times each day; and on these occasions, licenses and registration papers are subject to inspection and drivers without them will be ascertained.... [I]t must be assumed that finding an unlicensed driver among those who commit traffic violations is a much more likely event than finding an unlicensed driver by choosing randomly from the entire universe of drivers."); see also State v. Hill, 606 A.2d 793, 795-96 (Me.1992) (holding that significant state interest of ensuring drivers are licensed substantially outweighs minimal further intrusion of asking driver for identification).
Driving on public roadways is a privilege, and the privilege can be taken away as a means of meeting a legitimate legislative goal. Therefore, "the requirement of obtaining a driver's license and the exercise of the privilege of driving over the public highways, together with the correlative loss of the privilege under certain conditions, is a reasonable regulation of an individual right in the interest of the public good." Lite v. State, 617 So.2d 1058, 1060 (Fla.1993). Because of the need for pervasive regulation of vehicles capable of traveling on the public highways, drivers possess a reduced expectation of privacy in their vehicles. "The public is fully aware that it is accorded less privacy in its automobiles because of this compelling need for regulation." California v. Carney, 471 U.S. 386, 392, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985). It is for these reasons that the Fourth Amendment applies with greater flexibility during the course of a routine traffic stop.
Police officers are required to enforce the regulations pertaining to motor vehicles. It is certainly reasonable for a law enforcement officer to request a driver's license and vehicle registration while carrying out a routine traffic stop. United States v. Sullivan, 138 F.3d 126, 131 (4th Cir.1998). The stop is not naturally broken into two distinct parts: that of pulling the vehicle over and that of identifying the driver. An ordinary course of a traffic stop is to pull the driver over, identify the driver, and send the driver on his or her way.
In Florida v. Royer, 460 U.S. 491, 500, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983), the United States Supreme Court held that a detention of a driver must be reasonably related to the circumstances which justified the interference. I believe that identifying a driver and ensuring that the driver is properly licensed is reasonably related to the circumstances surrounding a lawful traffic stop and is an effective and minimally intrusive means of enforcing traffic laws. As the United States Supreme Court has recognized, every operator of a motor vehicle must expect that the State, in enforcing its regulations, will intrude to some extent upon that operator's privacy. New York v. Class, 475 U.S. 106, 113, 106 S.Ct. 960, 89 L.Ed.2d 81 (1986). Identifying a driver and ensuring that the driver is in compliance with the most basic regulations *443 is not an unreasonable intrusion into that driver's privacy.
I do not believe that the United States Supreme Court's opinions in Prouse and Royer can be extended to preclude the officer's actions in the instant case as the majority suggests. Importantly, both of these cases so heavily relied upon by the majority do not indicate that a police officer may not obtain the identity of a driver. In Prouse, the United States Supreme Court held that law enforcement may not randomly stop automobiles for the sole purpose of checking the driver's license and registration. The Court reasoned that such a random stop was unconstitutional because the officers did not have reasonable suspicion that the driver was violating any law. The Court, however, further recognized the importance of ensuring that drivers are properly licensed and noted that this may be accomplished during the course of a valid traffic stop. Delaware v. Prouse, 440 U.S. at 658-60. It is undisputed that the stop in the instant case was valid. The police officer in this case was therefore justified in ensuring that the respondent was properly licensed.
In Royer, the high Court held that a Fourth Amendment search must be strictly tied to and justified by the circumstances surrounding the initial detention. Florida v. Royer, 460 U.S. at 500, 103 S.Ct. 1319. In that case, the officers had detained a suspicious-acting young man in an airport because they believed the man to be a drug courier. The Court held, however, that during the course of this detention, the officers exceeded the limits of the investigatory stop because the officers asked the defendant to accompany them to a police room, retained his airline ticket and driver's license, and did not indicate that he was free to depart. The officers further informed the defendant that he was suspected of transporting narcotics. The Court, however, noted that the officers had in fact acted legally by asking for and examining the defendant's airline ticket and driver's license, but the officers simply should have stopped there. Id. at 501-02, 103 S.Ct. 1319.
I agree with the reasoning of the opinion of the Sixth Circuit Court of Appeals, sitting en banc, in a similar case:
[I]rrespective of whether the deputies were justified in detaining [the defendant] after he showed no signs of intoxication, and even if they had not, after approaching [the defendant], observed conditions raising reasonable and articulable suspicion that criminal activity was "afoot," they were entitled to ask [the defendant] for permission to search his vehicle. A law enforcement officer does not violate the Fourth Amendment merely by approaching an individual, even when there is no reasonable suspicion that a crime has been committed, and asking him whether he is willing to answer some questions. Florida v. Royer, 460 U.S. 491, 497, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). This includes a request for consent to search the individual's vehicle. United States v. Dunson, 940 F.2d 989, 994 (6th Cir.1991). And, this consent is not vitiated merely because the valid suspicion of wrongdoing for which an individual has been stopped proves to be unfounded or does not result in prosecution and the individual is free to go before being asked. See Ohio v. Robinette, 519 U.S. 33, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996). Of course, when a law enforcement officer no longer has any reasonable suspicion of criminal activity, the detained individual is constitutionally free to leave, and if the officer rejects the individual's indication that he would like to leave, valid consent can no longer be obtained. The fruits of *444 a search conducted under these circumstances would have to be suppressed.
Here, the deputies, in continuing to detain [the defendant] for further at-the-scene questioning, given what they observed, proceeded eminently reasonably. To have simply sent [the defendant] on his way, without brief further questioning at the very least, would have been plainly unreasonable, even inept, police work.
United States v. Erwin, 155 F.3d 818, 822-23 (6th Cir.1998).
Similarly, in the instant case, the police officer in no way exceeded the limits of the investigatory stop. The officer instead acted reasonably in obtaining the respondent's identification papers. The record does not indicate that the officer intended to detain the respondent any longer than simply to ascertain the respondent's identity and ensure that the respondent was a licensed driver. In fact, the officer needed to have a record of whom he had stopped. For example, the officer would be seriously criticized if a later claim for police brutality was brought by the person being stopped and the police agency had no record of the officer even having made the stop. To reverse a trial court's determination of reasonableness on the bases of these facts and then to reverse a conviction is simply unjustified.
Accordingly, I dissent.
NOTES
[1] In contrast, section 316.605(1), Florida Statutes, which requires that the tag be "plainly visible and legible at all times 100 feet from the rear or front," pertains only to permanent tags.
[2] I further disagree with the majority's statement that to hold that an officer can approach a driver would "permit law enforcement officers to randomly stop any and all vehicles having a temporary license plate ... and conduct a further examination and interrogation of the driver, and later justify the stop by simply claiming the tag ... was unreadable." Majority op. at 438. The circumstances of this case are not such that would open the door to boundless searches by overzealous law enforcement officers. Permitting a police officer to ascertain the identity of a driver subject to a lawful traffic stop and to ensure that the driver is properly licensed as a routine procedure does not give police officers a basis from which to randomly pull drivers over and subject them to interrogations. Our Fourth Amendment jurisprudence has long protected drivers from such conduct.