PER CURIAM.
The State of Florida appeals the trial court’s order granting appellee Jean Philppe Villate’s motion to suppress statements and physical evidence. Because the trial court succinctly recited to the facts in its order and is correct in its application of the law, we adopt the trial court’s order as our own. The trial court’s order reads as follows:

ORDER GRANTING DEFENDANT’S MOTION TO SUPPRESS STATEMENTS AND PHYSICAL EVIDENCE

THIS CAUSE having come before this Court and the Court having heard testimony and having had an opportunity to observe the witness’ demeanor, having heard argument of counsel for the Defendant and the State, and having reviewed the file and otherwise being fully advised, finds as follows:
1. On February 3, 2004, at approximately 2;00 a.m., Officer Angelini (the “Officer”) observed the Defendant, a black male, riding a bicycle with no headlights on Biscayne Boulevard. The bicycle was brand new with a wire basket attached to the front. A tool chest was inside the wire basket. Defendant’s hands were reasonably clean.
2. The Officer did not observe any criminal activity or suspicious behavior, other the absence of headlights on Defendant’s bicycle.
3. The Officer stopped the Defendant for the sole purpose of giving the Defendant a citation for not having headlights.
4. When the officer stopped the Defendant, the Defendant got off of the bicycle and laid the bicycle on the ground (instead of using the kick-stand) near the rear of the officer’s marked police vehicle.
5. The Officer then issued a citation to the Defendant for not having headlights on the bicycle.
6. The detention of Defendant should have ended once the citation was issued because the. Officer had no reasonable suspicion that a crime had been committed which would have justified further detention. The Officer had totally satisfied the purpose for which he had initially stopped and detained the Defendant, and he had no other reasonable ground or legal basis for continuing to detain Defendant. See State v. Diaz, 850 So.2d 435 (Fla.2003).
7. Defendant was not released, however. Instead, the officer continued to detain him, while the following took place:
8. The Officer noticed that the bicycle was new and had a wire basket attached to the front, so he continued to detain the Defendant. The Officer then obtained the serial number from the bicycle, and radioed it in to dispatch in order to determine whether the bicycle was stolen.
9. The Officer observed a tool chest and a portable power pack inside the basket. The Officer asked the Defendant what was inside the tool chest and the Defendant replied that there were tools inside. Then, with the Defendant’s permission, the officer looked inside the tool chest, and verified that there were tools inside. The tools were new, and *955 some of them were ifr their original packaging.
10. The Officer then read Miranda Rights to the Defendant, who had been in custody continuously since the initial detention, for the purpose of interrogating him. ■ -
11. After reading Miranda Rights to the Defendant, the officer received information via radio that the bicycle which the Defendant was riding had not been reported stolen.
12. Still, despite that information, the Officer continued to detain the Defendant. He asked the Defendant additional questions about the bicycle and his whereabouts earlier that evening. When the Defendant said that he had been at a friend’s house, the Officer asked for the address and took the Defendant, in his marked police car, to the address. It was an abandoned house. The Officer then drove the Defendant back to the location where the Defendant was initially stopped.
13. After further interrogation by the Officer, the Defendant stated that the bicycle belonged to his sister. The sister was then called to the scene, but she could not identify the bicycle.
14. Thereafter, more than thirty (30) minutes after Defendant was originally stopped for having no headlights, the Officer received information via radio that the bicycle Defendant was riding matched the description of a bicycle recently stolen in a burglary.
15. The Officer continued to detain the Defendant until the detective investigating the burglary arrived on the scene. That detective arrived and arrested the Defendant for the burglary.
16. While the Officer’s initial stop of the Defendant for purposes of issuing the citation was lawful, the continued detention after the citation was issued, without reasonable suspicion that a crime had been committed, was not lawful.
Accordingly, it is hereby
ORDERED AND ADJUDGED that . the Defendant’s Motion to Suppress Statements and Physical Evidence be, and the same is, hereby GRANTED.
Affirmed.