957 So.2d 76 (2007)
STATE of Florida, Appellant,
v.
Aaron Tyrone LEE, Appellee.
No. 5D06-2993.
District Court of Appeal of Florida, Fifth District.
May 11, 2007.
*77 Bill McCollum, Attorney General, Tallahassee, and Mary G. Jolley, Assistant Attorney General, Daytona Beach, for Appellant.
James S. Purdy, Public Defender, and Allison Havens, Assistant Public Defender, Daytona Beach, for Appellee.
GRIFFIN, J.
The State of Florida appeals the trial court's order suppressing evidence relating to the arrest of Aaron Tyrone Lee ["Defendant"]. We reverse.
On February 7, 2005, at about 10:00 p.m., Deputy Sheriff Gould was patrolling a roadway in the Melbourne area. When he was about forty to fifty feet away from Defendant's car, Deputy Gould noticed that the tag light on the 1998 Plymouth Neon, driven by Defendant, was not working. Deputy Gould turned his headlights off briefly, and confirmed that the tag light was out. Deputy Gould then initiated a traffic stop, and Defendant pulled his car over. Takesha Perry, Defendant's girlfriend, was in the car with Defendant at the time.
As Deputy Gould approached Defendant's car, he immediately detected the odor of cannabis. When he brought the odor to Defendant's attention, Defendant explained that he had just finished smoking cannabis and had smoked it inside the vehicle. A second Sheriff's deputy, Deputy Richter, arrived at the scene. Based on the smell of the cannabis, Deputy Richter searched Defendant's car. Inside, Deputy Richter found both a container and a clear plastic bag with crack cocaine in them. Defendant said that the cocaine belonged to him.
Deputy Gould arrested Defendant, and the State charged Defendant with possession of cocaine with intent to sell or deliver, a second-degree felony, and use or possession of drug paraphernalia, a first-degree misdemeanor. Defendant subsequently filed a motion to suppress all evidence of Deputy Gould's observations and investigation. The trial court heard testimony and arguments with respect to Defendant's motion to suppress and granted the motion.
At the hearing, Deputy Gould testified that the reason he stopped Defendant was that he observed, from forty to fifty feet away, that Defendant's tag light was not functioning. He explained:
[Defense Counsel]: After you made the stop, did you ask Mr. Lee about the tag lights?
[Deputy Gould]: I believe I did.
[Defense Counsel]: Did you check the tag light after the stop?
[Deputy Gould]: I checked it before I stopped. I turned the headlights off to indicate that it was still dark, and it was.
[Defense Counsel]: After the stop, I mean, did you go back and check the tail light again?
[Deputy Gould]: No, it wasn't working then. I didn't feel I needed to check it again.
[Defense Counsel]: You issued him a citation for the tail light?

*78 [Deputy Gould]: Yes, sir. I did.
Takesha Perry also testified at the hearing. She said that she inspected the tag light later on the evening of the stop and found that the tag light functioned. She took pictures of the tag light as evidence. These pictures were admitted, but were of limited value because of their poor quality.
In support of his motion, Defendant argued that Deputy Gould should have, but did not, check to see whether Defendant's tag light functioned from a distance closer than forty to fifty feet. Since he failed do this, Deputy Gould's testimony that the tail light did not work was unreliable, and the trial court should favor the testimony from Perry indicating that the tail light functioned.
While maintaining that the light did not work, the State also argued that the validity of the stop did not depend on whether the light worked. The stop was valid if the Deputy had a reasonable suspicion that a traffic infraction had occurred. The odor of burnt or burning cannabis detected as Deputy Gould approached the driver provided the Deputy probable cause to search the vehicle.
In its order granting Defendant's motion to suppress, the trial court found:
6. There was no evidence or testimony presented that the tag was not "clearly legible" at 50 feet,[1] and the evidence is conflicting as to whether the tag light was in fact operating. Deputy Gould testified that he could not see it when he was driving "40 to 50 feet" behind the vehicle, but Ms. Perry testified it was operative. An inability to see the light at 40 to 50 feet does not mean it is inoperative. It may justify an "inspection stop" under sec. 316.610,[2]but such an inspection was not performed, as Deputy Gould did not check the operation of the tag light once the Defendant had pulled over. If it was operable, he still could have paced out 50 feet to see if the tag was "clearly legible." Without determining that there was, in fact, a violation of law justifying the stop, further detention was not permissible. Even assuming arguendo that the tag would not have been "clearly legible" at 50 feet at 10:15 p.m. if the tag light was not visible at 50 feet, whether operating or not, there was no testimony or evidence presented as to how Deputy Gould estimated the distance between his vehicle and the Defendant's vehicle, or as to Deputy Gould's proficiency in determining distances, and there were no in-court demonstration or any proffer of his ability in that regard. While the Court does not doubt Deputy Gould's truthfulness, his failure to perform the simple steps of verifying the operation *79 of the tag light and measuring out the distance of visibility if operable, does call into question the accuracy and credibility of his estimations. Violations of laws cannot be based on estimations and suppositions, particularly when simple investigatory efforts that take little time and effort are not performed.
6. The Court finds based on the foregoing that there is insufficient competent evidence to justify the stop and detention of the Defendant.
(citations omitted) (emphasis added).
Although the trial court concluded that the failure to verify the light's function after stopping the vehicle impaired the "accuracy and credibility" of Deputy Gould's estimations, we conclude it does not matter and, accordingly, we reverse.
As a general matter, the decision to stop an automobile is reasonable for purposes of the Fourth Amendment where the police have probable cause to believe that a traffic violation has occurred.[3]Whren v. United States, 517 U.S. 806, 809-10, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996); see also Holland v. State, 696 So.2d 757, 759 (Fla.1997); Jordan v. State, 831 So.2d 1241, 1242-43 (Fla. 5th DCA 2002); State v. Kindle, 782 So.2d 971 (Fla. 5th DCA 2001). Probable cause exists "where the facts and circumstances within an officer's knowledge and of which he had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been committed." Stone v. State, 856 So.2d 1109, 1111 (Fla. 4th DCA 2003) (quoting State v. Byham, 394 So.2d 1142, 1143 (Fla. 4th DCA 1981)). Deputy Gould's observation that the light was not working, from forty to fifty feet away, was sufficient to warrant a man of reasonable caution to believe that the taillight was, in fact, inoperable and to stop the vehicle.
A circumstance similar to the facts of this case appears in Zeigler v. State, 922 So.2d 384 (Fla. 1st DCA 2006). In that case, an officer stopped the defendants' vehicle "because he was unable to see the vehicle's license tag, in violation of section 320.13(4), Florida Statutes (2003)." Id. at 385. However, as the officer "was approaching the stopped vehicle, he saw that a temporary tag was properly displayed." Id. The officer then approached the defendants' vehicle and asked to see the defendants' identification. One of the defendants rolled down his window and the officer, almost immediately, smelled burnt marijuana. The officer then detained the defendants. A search of the vehicle revealed drugs, drug paraphernalia and cash. The defendants argued that the evidence from the search should have been suppressed because it was improper for the officer to ask for their identification after he had ascertained that the license tag was properly displayed. The court held:
[The officer] had the legal authority to make personal contact with [Defendants] and to be in a position to smell the marijuana. An officer may use his sense of smell from a place where he may lawfully be to develop probable *80 cause for a detention. Once Officer Brownfield smelled the marijuana, he was entitled to detain [Defendants].
Although Officer Brownfield impermissibly asked for [Defendants'] identification, the trial court correctly determined that the contraband was not required to be suppressed. Under the inevitable discovery rule, when evidence is obtained through the result of unconstitutional police procedures, the evidence will still be admissible if it would have been discovered through legal means. Here, the trial court determined that Officer Brownfield smelled marijuana when he went to [Defendants'] stopped vehicle. Had Officer Brownfield immediately explained the reason for the stop when he made personal contact with [Defendants], rather than first asking [Defendants] for their identification, he would have still smelled marijuana and thus developed probable cause to detain [Defendants].
Id.; see also State v. Diaz, 850 So.2d 435, 440 (Fla.2003) ("Having verified the total validity of Mr. Diaz's temporary tag, the sheriff's deputy could lawfully make personal contact with Mr. Diaz only to explain to him the reason for the initial stop."); State v. Reed, 712 So.2d 458, 460 (Fla. 5th DCA 1998).
Deputy Gould's observation that Defendant's taillamp was not operating justified the traffic stop under section 316.221(2), and whether or not the deputy further inspected the vehicle after stopping Defendant, it was lawful for him to approach Defendant.
REVERSED and REMANDED.
THOMPSON and MONACO, JJ., concur.
NOTES
[1] Section 316.221, Florida Statutes (2005) provides:

(2) Either a taillamp or a separate lamp shall be so constructed and placed as to illuminate with a white light the rear registration plate and render it clearly legible from a distance of 50 feet to the rear. . . .
(3) A violation of this section is a noncriminal traffic infraction, punishable as a nonmoving violation as provided in chapter 318.
[2] In relevant part, section 316.610, Florida Statutes (2005), provides:

It is a violation of this chapter for any person to drive or move . . . on any highway any vehicle . . . which does not contain those parts or is not at all times equipped with such lamps and other equipment in proper condition and adjustment as required in this chapter, or which is equipped in any manner in violation of this chapter. . . .
(1) Any police officer may at any time, upon reasonable cause to believe that a vehicle is unsafe or not equipped as required by law, or that its equipment is not in proper adjustment or repair, require the driver of the vehicle to stop and submit the vehicle to an inspection and such test with reference thereto as may be appropriate.
[3] The Supreme Court noted that, in principle, "every Fourth Amendment case, since it turns upon a `reasonableness' determination, involves a balancing of relevant factors." Whren v. United States, 517 U.S. 806, 813, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). However, the court said:

Where probable cause has existed, the only cases in which we have found it necessary actually to perform the "balancing" analysis involved searches or seizures conducted in an extraordinary manner, unusually harmful to an individual's privacy or even physical interests  such as, for example, seizure by means of deadly force, unannounced entry into a home, entry into a home without a warrant, or physical penetration of the body.
Id. at 818, 116 S.Ct. 1769 (citations omitted).