970 So.2d 912 (2007)
STATE of Florida, Appellant,
v.
Curtis Lamont TULLIS, Appellee.
No. 5D07-1359.
District Court of Appeal of Florida, Fifth District.
December 28, 2007.
Bill McCollum, Attorney General, Tallahassee, and Carlos A. Ivanor, Jr., Assistant Attorney General, Daytona Beach, for Appellant.
James S. Purdy, Public Defender, and Allison Havens, Assistant Public Defender, Daytona Beach, for Appellee.
EVANDER, J.
After a traffic stop, Tullis was found to be in possession of cocaine, cannabis, and drug paraphernalia. The trial court granted Tullis' motion to suppress, finding that the traffic stop was illegal. We reverse.
*913 The facts surrounding the stop of Tullis' vehicle were largely uncontroverted. Tullis was operating a motor vehicle with a temporary tag beneath a tinted license plate cover. The arresting officer testified that he was approximately thirty feet behind Tullis' vehicle and that the temporary tag was "indistinguishable" because of the tinted cover. The officer activated his emergency lights and Tullis eventually pulled over into a parking lot. The officer exited his patrol car and approached Tullis' vehicle. According to the officer, the tag was still "indistinguishable" at a distance of four to five feet. Specifically, the officer testified:
I could see the white paper from the tag and I could see dark, what appeared to be lettering. I could not distinguish the numbers and letters.
As soon as the officer walked up to the driver's side window, he smelled the odor of burnt cannabis coming from the vehicle. Cocaine, cannabis, and drug paraphernalia were subsequently found on Tullis.
Tullis contended that section 320.131(4), Florida Statutes (2006),[1] does not require a temporary tag to be legible, only that it be "clearly visible." Thus, Tullis argued, the arresting officer had no basis to detain him because the tag was "clearly visible" to the officer prior to the stop. The trial court agreed with Tullis.
Section 320.131(4), Florida Statutes (2006), provides that temporary tags shall be "clearly visible from the rear of the vehicle." We find that where the preprinted identification numbers and letters on a temporary tag are illegible from five feet away, because of a tinted license plate cover, the tag is not "clearly visible." Sands v. State, 753 So.2d 630 (Fla. 5th DCA 2000). Because the officer had probable cause to believe that Tullis had violated section 320.131(4), the officer was authorized to stop Tullis' vehicle. Whren v. United States, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996).
Tullis argues that because section 320.131(4) does not expressly state that a temporary tag has to be legible, it is irrelevant whether the officer could read the tag from five feet away. We reject Tullis' proposed construction of the statute. To accept Tullis' argument would mean that a motorist could drive with a "visible," but illegible, expired or unassigned temporary tag with relative impunity because an officer would lack the authority to detain the motorist to determine if the tag was valid. A court should endeavor to construe a statute in a manner which would not lead to absurd results that were obviously not intended by the legislature. Maddox v. State, 923 So.2d 442, 446 (Fla.2006). Furthermore, to construe the statute as proposed by the defendant would not give effect to the plain meaning of the words "clearly visible." Holly v. Auld, 450 So.2d 217, 219 (Fla.1984).
We also find Tullis' reliance on State v. Diaz, 850 So.2d 435 (Fla.), cert. denied, 540 U.S. 1075, 124 S.Ct. 936, 157 L.Ed.2d 745 (2003), to be misplaced. In Diaz, the officer stopped the defendant because the expiration date on the defendant's temporary tag was not legible from the officer's motor vehicle. As the officer approached the defendant's vehicle, he was able to read the expiration date on the defendant's *914 temporary tag and was "totally satisfied" that the tag was valid. Id. at 437. Notwithstanding his determination that the temporary tag was valid, the officer requested additional information from the defendant which ultimately led to the charge against the defendant of driving with a suspended license. The Florida Supreme Court held that it was unlawful for the officer to continue to detain the defendant once the officer had confirmed the validity of the tag. The Diaz court did not, however, hold that the initial stop of the defendant was unlawful. The majority opinion recites that the court assumed, without expressly holding, that the initial stop was lawful. Id. at 437. The three justices who concluded that the initial stop was unlawful did so only after observing that the case involved an illegible expiration date, not an illegible tag.
The officer's inability to read the handwritten expiration date on a properly issued, properly displayed and otherwise legible temporary tag did not establish a valid basis for a suspected violation of the temporary tag requirements. . . . To construe section 320.131(4) as requiring that a law enforcement officer be able to read the handwritten expiration date as well as the larger, preprinted identification numbers and letters on a temporary tag would mean that almost every motorist driving a vehicle with a temporary tag would be subject to police detention.
Id. at 440-41 (Pariente, J., specially concurring) (emphasis added). Thus, a close reading of Diaz reveals that not a single justice expressed the view that a police officer lacked the authority to stop a vehicle where the preprinted identification numbers and letters on the vehicle's temporary tag were illegible.
We also observe that the Diaz court found it significant that the alleged illegibility of the expiration date was caused by the State, not by the defendant. The court stated that to uphold the validity of the defendant's continued detention:
[W]ould permit law enforcement officers to randomly stop any and all vehicles having a temporary license plate designed and created by the State and conduct a further examination and interrogation of the driver, and later justify the stop by simply claiming the tag, a product created by the State, was unreadable.
Id. at 438. Here, it was Tullis' use of a tinted license plate cover which rendered the entire tag, not just the expiration date, illegible. Tullis should not be heard to complain where it was his own actions that prevented the officer from being able to confirm the validity of the temporary tag without having to first detain Tullis.
Finally, even if the officer had been able to read the preprinted identification numbers and letters on Tullis' tag after initially stopping him, the search of Tullis would still have been lawful. In Diaz, the court stated that the officer could lawfully have made personal contact with Diaz to inform him of the reason for the stop.
Having verified the total validity of Mr. Diaz's temporary tag, the sheriff's deputy could lawfully make personal contact with Mr. Diaz only to explain to him the reason for the initial stop.
Id. at 440. If the officer in the present case had approached Tullis solely for the purpose of informing Tullis of the reason for the stop, the officer still would have detected the odor of cannabis emanating from Tullis' car. The officer would then have had probable cause to search Tullis and his vehicle. See Blake v. State, 939 So.2d 192, 197 (Fla. 5th DCA 2006); State v. T.P., 835 So.2d 1277, 1279 (Fla. 4th DCA 2003).
*915 The trial court erred in granting Tullis' motion to suppress.
REVERSED and REMANDED.
PLEUS and MONACO, JJ., concur.
NOTES
[1] Section 320.131(4) provides:

Temporary tags shall be conspicuously displayed in the rear license plate bracket or attached to the inside of the rear window in an upright position so as to be clearly visible from the rear of the vehicle. On vehicles requiring front display of license plates, temporary tags shall be displayed on the front of the vehicle in the location where the metal license plate would normally be displayed.