936 So.2d 1158 (2006)
Cameron LANIER, Appellant,
v.
STATE of Florida, Appellee.
No. 2D04-1786.
District Court of Appeal of Florida, Second District.
August 18, 2006.
*1159 James Marion Moorman, Public Defender, and Heather M. Gray, Special Assistant Public Defender, Bartow, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Tiffany Gatesh Fearing, Assistant Attorney General, Tampa, for Appellee.
STRINGER, Judge.
Cameron Lanier challenges his convictions for driving without a license, possession of cocaine, and resisting an officer without violence. Because we hold that an officer can legally request identification from even an "innocent" driver of a motor vehicle during the course of a lawful stop of the vehicle, we affirm. We also affirm the revocation of Lanier's probation; however, we remand to the trial court for it to enter an amended order of revocation striking the findings that Lanier violated conditions 1, 7, and 47.

Facts
On September 25, 2003, Polk County Sheriff's deputies obtained information that an individual with outstanding warrants was riding as a passenger in a gray Ford Contour bearing a specific license plate number. During routine traffic patrol, Officer Ryan Shea located the Ford, and after confirming that the passenger in the car was the individual being sought, he stopped the Ford. Shea testified that the driver of the Ford had not committed any traffic infractions and pulled over immediately when Shea activated his lights and siren.
After stopping the car, Shea went immediately to the passenger door, ordered the passenger out of the car, and arrested the passenger on the outstanding warrant. After the arrest was made but while the investigation relating to the passenger's arrest was still in progress, Shea approached Lanier, who was driving the car, and asked Lanier for identification. When *1160 Lanier produced a State of Florida identification card, Shea took the card from him and ordered him to stay in the car while Shea "ran his identification." As Shea testified, "I told him to stay in the seat and we were just going to run his name and make sure that he didn't have any outstanding warrants. Make sure that his license was good and then he'd be on his way." Shea admitted that at that point he had not seen Lanier commit any traffic infractions and that the only reason for stopping the vehicle was to effect the arrest of the passenger on the pre-existing warrant.
While another officer began running Lanier's identification through the computer system, Shea remained near the driver's side of Lanier's car. At some point during the wait for the computer check, Lanier got out of the car. Shea told Lanier to get back in the car, but Lanier refused. Lanier then "shoved" his left hand into the waistband of his pants. Shea ordered Lanier to remove his hand from his pants, but Lanier did not comply. Shea then grabbed Lanier's arm, wrestled him to the ground, and handcuffed him. While a patdown search of Lanier did not reveal any contraband, a subsequent search of the area of the struggle revealed a baggie that contained cocaine. These events ultimately gave rise to the charges of driving without a license, possession of cocaine, and resisting an officer without violence in case number CF03-006501.
At the time of his arrest, Lanier was on probation in case numbers CF01-08037A and CF02-02806A. In response to this new arrest, the Department of Corrections filed an affidavit of violation of probation. In addition to the allegations based on the new law violations, the affidavit alleged that Lanier had made a false report to his probation officer by claiming that he was employed when he was not. The affidavit also alleged that Lanier had made a second false report when he reported that he was enrolled in and attending "NCTI" school when he was not.
Lanier subsequently filed a motion to suppress the evidence that resulted from the stop by Shea, contending that it resulted from an illegal detention. For reasons not entirely clear from the record, the trial court proceeded with the revocation hearing before entertaining arguments on Lanier's motion to suppress. At the revocation hearing, Lanier objected to the proceeding, arguing that the trial court should consider his motion to suppress in case number CF03-006501 before considering the revocation of his probation. The trial court overruled this objection. Shea then testified to the facts of Lanier's arrest over Lanier's objection that such evidence was inadmissible because it was the product of an illegal detention. In addition, Lanier's probation officer, Ricky Brooks, testified to the alleged false reports made by Lanier. Brooks testified that Lanier had told him that he was working for a firm called Labor Ready. Brooks testified that he called Labor Ready and was informed that Lanier had not worked there since 2002. Brooks also testified that he had contacted the school coordinator for the NCTI school, and she told him that Lanier had never enrolled and was not attending the school. Lanier objected to all of this testimony on the grounds that it was hearsay.
Despite Lanier's objections, at the conclusion of the revocation hearing, the trial court found that Lanier had violated his probation by committing new crimes (condition 4) and by providing false reports to his probation officer concerning his employment and his schooling (conditions 1, 7, and 47). The trial court revoked Lanier's probation and sentenced him to ten years in prison in case CF01-08037A and to a *1161 concurrent five years in prison in case number CF02-02806A.
Shortly after the revocation hearing, the trial court held a hearing on Lanier's motion to suppress the evidence against him in case number CF03-006501. Officer Shea again testified to the facts surrounding Lanier's arrest. After hearing this testimony, the trial court denied Lanier's motion, stating that it believed that Shea could validly request Lanier's driver's license because he had been driving at the time of a valid traffic stop. Lanier then pleaded guilty to the charges while specifically reserving his right to appeal the denial of his motion to suppress, which the State conceded was dispositive. The trial court then sentenced Lanier to five years in prison, to run concurrently with the sentences resulting from the revocation of probation.

Validity of Detention
The disposition of Lanier's motion to suppress is controlled by whether Shea had the authority to request identification from Lanier, the innocent driver of the Ford, when the sole purpose of the stop of Lanier's vehicle was to effect the passenger's arrest. We do agree with Lanier that an officer may not continue to detain a driver following a traffic stop once the purpose for the stop has been satisfied and removed. State v. Diaz, 850 So.2d 435, 437 (Fla.2003); Blackwelder v. State, 853 So.2d 479 (Fla. 2d DCA 2003); State v. Klein, 736 So.2d 9 (Fla. 4th DCA 1998). However, when a vehicle has been lawfully stopped and the investigation relating to the stop has not yet been completed, it is not a violation of the Fourth Amendment for an officer to ask the driver to produce identification. The supreme court has held that officers may lawfully request identification from drivers during the course of consensual encounters and may hold the identification long enough to check the validity of the identification and run a warrants check. See, e.g., State v. Baez, 894 So.2d 115, 117 (Fla.2004); Lightbourne v. State, 438 So.2d 380, 388 (Fla.1983). Certainly, if such a request is permissible during the course of a consensual encounter, a similar request during the course of a lawful stop and detention does not rise to the level of a constitutionally cognizable infringement.
Here, there is no dispute that Lanier's vehicle was lawfully stopped. There was also testimony at the hearing on the motion to suppress that the purpose for the stopthe arrest of Lanier's passengerhad not been completed and that the investigation relating to the arrest was ongoing. Because the car was lawfully stopped and the investigation arising from the reason for the stop had not been completed, Shea could lawfully ask Lanier to produce identification. In addition, pursuant to Baez, Shea could retain possession of the identification and run a check of its validity and a warrants check. Moreover, when Lanier produced only an identification card rather than a driver's license, reasonable suspicion arose for Shea to believe that Lanier was driving without a proper license. See § 322.15(1), Fla. Stat. (2003) (requiring every licensee to have his or her driver's license in immediate possession while operating a motor vehicle and to produce it upon demand). Accordingly, at that point, Shea could validly detain Lanier while he investigated the status of Lanier's driver's license. See § 322.34(2) (making it a criminal offense for a driver to operate a motor vehicle knowing that his or her license has been suspended, revoked, or canceled). Thus, because the evidence against Lanier was obtained during the course of a lawful detention, the trial court properly denied Lanier's motion to suppress, and his convictions *1162 for the offenses arising out of the stop are affirmed.

Revocation of Probation
As to the revocation of Lanier's probation, we agree with Lanier that evidence discovered during an unlawful detention and search is not admissible during a hearing to revoke probation. State v. Scarlet, 800 So.2d 220, 221 (Fla.2001) (quoting Scarlet v. State, 766 So.2d 1110, 1111 (Fla. 3d DCA 2000)); Williams v. State, 791 So.2d 37, 38 (Fla. 2d DCA 2001). However, because we have found that Lanier's detention was lawful, the evidence concerning the new law offenses was properly considered by the court and supports the revocation of Lanier's probation based on a violation of condition 4.
However, the only evidence supporting the violations of conditions 1, 7, and 47 was hearsay. Although it is true that hearsay evidence is admissible at a revocation hearing, revocation may not be based solely on hearsay evidence. Thompson v. State, 890 So.2d 382, 383 (Fla. 2d DCA 2004); Clemons v. State, 388 So.2d 639, 640 (Fla. 2d DCA 1980). In Thompson, this court held that testimony from Thompson's probation officer as to what the officer was told by "someone" at a drug treatment program about Thompson's attendance was pure hearsay that could not support the revocation of Thompson's probation. 890 So.2d at 383. Similarly, in Clemons, this court noted that the only evidence of Clemons' alleged violation was "the hearsay testimony of the probation supervisor about what appellant's employer had said in a telephone conversation." 388 So.2d at 640. This court held that this type of testimony, which was pure hearsay, was insufficient to support the revocation of Clemons' probation. Id.
Here, as in Thompson and Clemons, the only evidence of Lanier's alleged violations concerning his employment and schooling was the testimony of his probation officer concerning what Lanier's employer allegedly said in a telephone conversation about his employment and what a school coordinator allegedly said in a telephone conversation about his attendance. As hearsay, this testimony was insufficient, standing alone, to support a finding that Lanier violated these conditions of his probation. Because the State presented no other testimony concerning these alleged violations, the trial court erred in revoking Lanier's probation based on the alleged violations of conditions 1, 7, and 47. Accordingly, while we affirm the revocation of Lanier's probation based on the violation of condition 4, we must remand for entry of a corrected revocation order striking the findings as to conditions 1, 7, and 47.
Affirmed and remanded with instructions.
CASANUEVA and SILBERMAN, JJ., Concur.