972 So.2d 247 (2007)
Carlos S. McKNIGHT, Appellant,
v.
STATE of Florida, Appellee.
No. 1D06-5937.
District Court of Appeal of Florida, First District.
December 31, 2007.
*248 Nancy A. Daniels, Public Defender; and Steven L. Seliger, Assistant Public Defender, Tallahassee, for Appellant.
Bill McCollum, Attorney General; and Thomas D. Winokur, Assistant Attorney General, Tallahassee, for Appellee.
BROWNING, C.J.
Carlos S. McKnight (Appellant) appeals orders revoking his probation and sentencing him to prison after the trial court relied on certain testimony that, according to Appellant, was based on evidence obtained during an unlawful seizure and should have been suppressed. Finding no abuse of discretion, we affirm the denial of the motion to suppress and the entry of the final orders revoking probation and sentencing Appellant to prison based on his material violations of Conditions (5) and (18).
In March 2005, Appellant was sentenced to one year and one day in prison, to be followed by ten years' probation. A May 2006 affidavit alleged that during that probationary period, Appellant had violated 1) Condition (5), by failing to live and remain at liberty without violating the law, in that on May 3, 2006, he was arrested for driving with a suspended or revoked license; 2) Condition (18), by failing to undergo a drug/alcohol evaluation, in that on April 26, 2005, Appellant was instructed to attend an evaluation at River Region Human Services, yet as of May 5, 2006, he had provided no proof of attendance; and 3) Condition (10), by failing to pay court costs to *249 the probation officer pursuant to the court's agreed payment instructions, in that Appellant owed $4,818.30 to the Washington County Clerk of Court as of May 5, 2006.
By the date of the revocation hearing, Appellant was nearly caught up in paying the court cost arrearage; the trial court concluded that this violation of Condition (10) was not material. Ms. Thomas, Appellant's probation supervisor, testified that Appellant had not provided documentation of completion of the required drug/alcohol evaluation within the allotted time. The trial court's finding a violation of Condition (18) based on this non-compliance is supported by competent, substantial evidence and is not challenged on appeal. Rather, Appellant contends that the court erred in finding a violation of Condition (5), in that the inculpatory evidence deriving from Appellant's contact with the police officers is inadmissible, should have been suppressed, and thus should not have been considered as a factor in revoking probation. See State v. Cross, 487 So.2d 1056 (Fla.1986) (stating that evidence obtained through an unlawful search is inadmissible in a probation revocation hearing).
The parties agree on the appropriate standard of review. In reviewing the denial of a motion to suppress, this court must determine whether the factual findings are supported by competent, substantial evidence, but no deference is due the trial court's conclusions of law. See Hines v. State, 737 So.2d 1182, 1184 (Fla. 1st DCA 1999). Although appellate courts accord a presumption of correctness to the trial court's rulings on suppression issues regarding the "determination of historical facts," appellate panels "must independently review mixed questions of law and fact that ultimately determine constitutional issues arising in the context of the Fourth and Fifth Amendment and, by extension, article I, section 9 of the Florida Constitution." Connor v. State, 803 So.2d 598, 608 (Fla.2001) (citing Ornelas v. United States, 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996)). In applying this presumption of correctness regarding historical facts, this court "must interpret the evidence and reasonable inferences and deductions derived therefrom in a manner most favorable to sustaining the trial court's ruling." Pagan v. State, 830 So.2d 792, 806 (Fla.2002). The decision to revoke probation is reviewed for an abuse of discretion. See Hurst v. State, 941 So.2d 1252, 1253 (Fla. 1st DCA 2006).
Viewed in a light most favorable to the State, see Pagan, the evidence that Appellant sought to suppress established the following facts. The alleged violation of Condition (5) was based on Appellant's arrest on May 3, 2006, for driving while his license was suspended or revoked. Officer Straitt testified that on that date, he was working in a specialized unit dealing with community problems such as drug and burglary complaints. When on assignment, he wore a uniform identifying himself as a Jacksonville police officer. The police had received a series of citizen complaints about a duplex at 718 Day Avenue in Riverside, where a black male reportedly was selling drugs. Straitt and another officer knocked on a door at that address and hoped to meet with the tenant. Instead, they encountered the landlord, who stated that Shawn Washington rented and lived in that apartment, but no one was there at 4:00 p.m. The police wanted to contact Mr. Washington to determine whether the recent complaints about criminal activity were well-founded. The landlord told the officers that Mr. Washington would be back around 7:00 p.m. Officer Straitt and his partner returned to 718 Day Avenue around 7:00 p.m. and approached the duplex.
*250 Having heard a vehicle drive up, the officers observed a black male (who was identified in court as Appellant) sitting in the driver's seat of a sports utility vehicle (SUV) in the front driveway. The engine was running, and no one else was in the vehicle. At that point, the police knew only that the suspect, Mr. Washington, was a black male. Over an objection, Officer Straitt testified that as the police approached the stopped vehicle, Appellant opened the door but remained inside. The vehicle was parked close to the front door of Apartment # 718. The police were neither blocking the vehicle nor restraining Appellant's movement.
Officer Straitt (who was in uniform) introduced himself, stated that he was performing an investigation, and asked (speaking in a conversational tone and without brandishing a weapon) if Appellant was Mr. Washington and whether he lived at # 718. When Appellant stated his name, which is not Washington, Officer Straitt asked for his identification to verify that Appellant was, in fact, not the person the police were investigating for criminal activity and to have a name for the police investigation report indicating persons to whom the officers had spoken. Appellant produced a Florida I.D. card with a red border. The presentation of the I.D. card, under the particular circumstances, led Straitt to suspect that Appellant might be driving without a valid driver's license. From his experience, Officer Straitt knew that many people with I.D. cards do not have a license. When Officer Straitt asked if Appellant had a valid driver's license, Appellant told him "no." When the officer asked whether the license was suspended or revoked, Appellant commented that it was "badly suspended." Checking the status of the license disclosed that Appellant was a habitual traffic violator. Because that status of violation is a felony, the officers could not merely write a traffic citation. Instead, they arrested Appellant, read his rights under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and seized the vehicle. Appellant remarked that the police had not seen him driving the SUV, but he did not comment on the license violation.
As to the events leading to his detention and arrest relating to Condition (5), Appellant notes on appeal that he presented evidence that conflicted with the State's contention that the officers observed Appellant in the driver's seat shortly after the SUV arrived at # 718. Appellant testified that an officer mentioned the recent citizen complaints and asked him what was going on. When the officer asked for a driver's license, Appellant produced an I.D. card and stated he did not have a valid license because it was "badly suspended." The DHSMV had notified Appellant that his license was suspended for five years. Appellant testified that he did not drive because he knew that doing so without a valid license would violate Condition (5). To the extent that the testimony of Officer Straitt and Appellant conflicted, the trial court exercised its authority as the trier of fact to assess credibility and weigh the evidence in the State's favor.
The trial court noted that the testimony given by Officer Straitt over a defense objection is dispositive of the issues in Condition (5). The court found that the officers' contact with Appellant was a consensual police-citizen encounter up to the point where Appellant disclosed a violation of the law: the suspended or revoked license (where, according to the officer, Appellant had been driving the vehicle). Our task is to determine whether, given the facts as found and supported by competent, substantial evidence, the trial court correctly applied the law.
*251 This is not a "traffic stop" case, for the SUV had recently pulled into the driveway and was stationary, with the engine running and Appellant in the driver's seat. "The Fourth Amendment requires all warrantless `seizures' of a person to be founded upon at least reasonable suspicion that the individual seized is engaged in wrongdoing." Golphin v. State, 945 So.2d 1174, 1180 (Fla.2006) (citing United States v. Mendenhall, 446 U.S. 544, 552, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980), and Terry v. Ohio, 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). The United Supreme Court made it clear in Terry, 392 U.S. at 19 n. 16, 88 S.Ct. 1868, that not every encounter between a law-enforcement officer and a citizen is a "seizure." The Florida Supreme Court has recognized essentially three levels of police-citizen encounters. See Golphin, 945 So.2d at 1180; Popple v. State, 626 So.2d 185, 186 (Fla.1993). The first level, a "consensual encounter," "involve[s] minimal police contact and do[es] not invoke constitutional safeguards." Golphin, 945 So.2d at 1180. The second level, an "investigatory stop," allows a police officer to "detain a citizen temporarily if the officer has a reasonable suspicion that a person has committed, is committing, or is about to commit a crime." Id.; § 901.151(2), Fla. Stat. (2006). The third level is an "arrest," which requires probable cause. § 901.151(4); Golphin, 945 So.2d at 1180.
Determining whether a police-citizen encounter is consensual or has risen to an investigatory stop, for Fourth-Amendment purposes, involves examining the totality of the circumstances surrounding the incident. See Florida v. Bostick, 501 U.S. 429, 439-40, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991); State v. Butler, 655 So.2d 1123, 1125 (Fla.1995). A law-enforcement officer does not violate the Fourth Amendment simply by approaching someone on the street and asking questions, if the individual is willing to listen. See United States v. Drayton, 536 U.S. 194, 200, 122 S.Ct. 2105, 153 L.Ed.2d 242 (2002); Golphin, 945 So.2d at 1181. As the officers investigated recent complaints of crime at 718 Day Avenue and approached the SUV at the specific time when Mr. Washington, known by them to be a black male, was expected to be there, Appellant opened the door of the vehicle. Officer Straitt casually introduced himself, stated that he was performing an investigation, asked for Appellant's name, and inquired as to whether Appellant lived at that address. Because a reasonable person would have believed he was free to leave, this episode was nothing more than a consensual police-citizen encounter, which did not trigger constitutional safeguards. See Mendenhall, 446 U.S. at 553-54, 100 S.Ct. 1870; Golphin, 945 So.2d at 1180, 1187-88; Popple, 626 So.2d at 186; State v. Gonzalez, 919 So.2d 702, 703 (Fla. 5th DCA 2006) (stating that in a consensual police-citizen encounter, an officer can approach an individual in public, ask questions, and request identification without having a founded suspicion of criminal activity).
When Appellant orally stated his name as something other than Mr. Washington, Officer Straitt asked for identification to verify Appellant's identity. The officer testified that he had two reasons for requesting identification: to make sure that the man was not the individual suspected of criminal activity at that location, and to have a name to put in the police investigation report indicating any person(s) to whom the police had spoken. At that point, the episode remained a consensual encounter, not a seizure. See Bostick, 501 U.S. at 437, 111 S.Ct. 2382 (stating than an officer's request to a defendant for identification is not a detention or seizure); Golphin, 945 So.2d at 1180-82 (stating that *252 any police activity that restrains a citizen is a seizure, and such contact can be deemed consensual only if a reasonable person would have felt free to leave); Gonzalez, 919 So.2d at 704.
However, once Appellant (the presumed driver of the SUV) produced the I.D. card rather than a driver's license, a reasonable suspicion arose, justifying a temporary detention to ascertain whether Appellant had a valid driver's license and to run a computer check. See § 901.151(2), Fla. Stat. (2006); Lanier v. State, 936 So.2d 1158, 1161 (Fla. 2d DCA 2006).
The very similar facts in Lanier support affirmance and warrant close consideration. Officers received information that an individual with outstanding warrants was a passenger in a gray Ford automobile bearing a specific license tag number. While on routine traffic patrol, Officer Shea located the Ford, confirmed that the passenger was the person being sought, and stopped the vehicle. The officer went immediately to the passenger's door, ordered the passenger out of the car, and arrested the passenger on the outstanding warrant. See id. at 1159. After the arrest, but while the investigation relating to the passenger's arrest was ongoing, the officer approached Mr. Lanier, the driver, and asked for identification. When Mr. Lanier produced a Florida I.D. card, Officer Shea took it, ordered Mr. Lanier to remain in the car, and "ran his identification" to assure that his license was good and that he had no outstanding warrants. At that point, the officer had not seen Mr. Lanier commit any traffic infraction; the only reason for stopping the car was to effect the arrest of the passenger on the pre-existing warrant. See id. at 1159-60. As another officer ran Mr. Lanier's identification through the computer, Mr. Lanier exited the vehicle, contrary to Officer Shea's instructions, and shoved his hands into the waistband of his pants, whereupon the officer ordered Mr. Lanier to remove his hands. When Mr. Lanier failed to comply, the officer grabbed him, wrestled him to the ground, and handcuffed him. Although a pat-down of Mr. Lanier revealed no contraband, a subsequent search of the area near the struggle disclosed a baggie containing cocaine. These events resulted in charges of driving without a license, possession of cocaine, and resisting an officer without violence. Like Appellant, Mr. Lanier was on probation when he was arrested, and the DOC filed an affidavit of violation of probation, which Mr. Lanier challenged by moving to suppress the evidence arising from the vehicular stop, which (he argued) resulted in an illegal detention. The trial court revoked Mr. Lanier's probation without considering his motion to suppress. See id. at 1160.
Subsequently, the trial court denied Mr. Lanier's motion to suppress on the grounds that an officer conducting a valid traffic stop can properly request the driver's license of the driver. The Second District Court noted that "[t]he disposition of Lanier's motion to suppress is controlled by whether Shea had the authority to request identification from Lanier, the innocent driver of the Ford, when the sole purpose of the stop of Lanier's vehicle was to effect the passenger's arrest." See id. at 1161. Given the testimony that the investigation relating to the traffic stop had not been completed when Officer Shea asked for Mr. Lanier's identification, and noting the holdings of the United States Supreme Court that during a consensual encounter, an officer may lawfully request and hold the identification long enough to run a warrants check, the Second District Court stated that "a similar request during the course of a lawful stop and detention does not rise to the level of a constitutionally cognizable infringement." See id. It was undisputed that Mr. Lanier's car was *253 lawfully stopped. With a lawful stop and ongoing investigation arising from the reason for the stop, Officer Shea could properly ask for Mr. Lanier's identification. See id. (quoting State v. Baez, 894 So.2d 115 (Fla.2004)).
Significant to Appellant's case is the Lanier panel's conclusion, citing § 322.15(1), Fla. Stat. (2003), that "when Lanier produced only an identification card rather than a driver's license, reasonable suspicion arose for Shea to believe that Lanier was driving without a proper license." Lanier, 936 So.2d at 1161. Thus, Officer Shea was justified under section 901.151(2), Florida Statutes (2006), in detaining Mr. Lanier while investigating the status of his driver's license. The evidence against Mr. Lanier obtained during the lawful detention was not illegally obtained, and the motion to suppress was correctly denied. See Lanier, 936 So.2d at 1161-62.
In the instant case, Officer Straitt knew that many people with I.D. cards do not have a valid license. As in Lanier, 936 So.2d at 1161, a reasonable suspicion of criminal activity arose when Appellant produced an I.D. card rather than a driver's license. When Officer Straitt asked whether Appellant had a valid license, Appellant answered "no." When asked whether his license was suspended, Appellant answered that it was "badly suspended." When the other officer checked the status of the license, Appellant was found to be a habitual traffic violator. See § 322.264, Fla. Stat. (2006) (defining "habitual traffic offender").
Section 322.15(1), Fla. Stat. (2006), states:
322.15 License to be carried and exhibited on demand; fingerprint to be imprinted upon a citation. 
(1) Every licensee shall have his or her driver's license, which must be fully legible with no portion of such license faded, altered, mutilated, or defaced, in his or her immediate possession at all times when operating a motor vehicle and shall display the same upon the demand of a law enforcement officer or an authorized representative of the department.
Appellant failed to comply with the statutory requirement to have and carry a valid driver's license. Officer Straitt testified that because Appellant's "habitual traffic offender" infraction is a felony, the officers could not merely write a traffic citation. Instead, they properly arrested Appellant, read his Miranda rights, and seized the vehicle. See § 322.34(5), Fla. Stat. (2006) (designating a third-degree felony where any person whose driver's license has been revoked under the "habitual offender" provision drives any motor vehicle upon the highways of this state while such license is revoked); § 901.15(1), Fla. Stat. (2006) (authorizing a warrantless arrest where the person has committed a felony in the officer's presence).
Because the initial encounter was consensual and the officers lawfully detained Appellant for further investigation only after a reasonable suspicion of criminal activity arose, the temporary detention and the arrest were lawful, the motion to suppress was correctly denied pursuant to federal and Florida law, and the trial court properly considered the new violation of law in concluding that Appellant substantially and willfully violated two conditions of probation. Accordingly, we AFFIRM the orders revoking probation and sentencing Appellant to concurrent terms of five years' incarceration.
BARFIELD, J., concurs.
BENTON, J., concurs in the judgment.