LEWIS, J.
 

 Keiuon D. Majors, Appellant, challenges his convictions and sentences for trafficking in illegal drugs, possession of a firearm or ammunition by a convicted felon, possession of cocaine, possession of a controlled substance without a prescription, possession of cannabis, and resisting an officer without violence. Appellant argues the trial court should have granted his dispositive motion to suppress evidence obtained after police officers stopped the vehicle in which he was traveling. He contends the stop was illegal because the officers had no reasonable suspicion of criminal activity. We agree. As a result, we reverse Majors’ convictions and sentences and remand with directions to the trial court to grant the motion to suppress and discharge him for these offenses.
 

 Shortly before Appellant’s arrest, a bank manager called 911 and, whispering, reported that a customer was “acting weird” and attempting to withdraw $17,500. The customer wanted to make a check payable to the driver of a Nissan that was parked in front of the bank, and the customer kept going back and forth between the Nissan and the bank, acting strangely and having discussions with the people in the Nissan. The bank manager was not aware of this customer having made such a large withdrawal in the past. The dispatcher suggested that perhaps the people in the Nissan were forcing the customer to withdraw money. In response, the bank manager told the dispatcher that the customer seemed to know what he was doing but that the bank employees thought he might be on drugs. The bank manager also indicated that one of the people who had been outside at the Nissan had come into the bank. Some of the people involved in this scenario were pacing and wanting to know why the transaction was taking so long, and their activities were causing the bank employees concern. The bank manager described the Nissan, and the dispatcher conveyed the information to the responding officers.
 

 When the officers arrived at the bank, they saw a Nissan matching the description provided in the call. The Nissan attempted to back out of a parking space, but the officers blocked the Nissan’s exit with their vehicles and then approached. Appellant was in the Nissan when the officer approached it. Based on his interaction with the police at that point, he was arrested, and evidence was seized from him.
 

 Appellant filed a motion to suppress all the evidence seized as a result of the stop of the Nissan. He argued, among other things, that the officers lacked reasonable suspicion to stop the Nissan. At the suppression hearing, the officers admitted that they did not see any criminal activity and were not aware of any criminal activity that had occurred before they stopped the Nissan. They explained that the basis for stopping the Nissan was that it was involved in the call they were investigating.
 

 Ultimately, the trial court concluded that the officers had reasonable suspicion to stop the Nissan and denied the motion to suppress. Thereafter, Appellant pled
 
 *659
 
 nolo contendere to six counts of criminal activity resulting from his interactions with the police at the bank. He reserved his right to appeal the denial of his motion to suppress and now raises the denial as error in this Court.
 

 Motions to suppress present mixed questions of fact and law.
 
 See McKnight v. State,
 
 972 So.2d 247, 249 (Fla. 1st DCA 2007). A trial court’s factual findings supporting a motion to suppress are reviewed to determine whether they are grounded in competent, substantial evidence, and its legal conclusions are reviewed de novo.
 
 Id.
 
 In particular, whether reasonable suspicion exists for a detention under a specific set of facts is a question of law to be reviewed de novo.
 
 Beahan v. State,
 
 41 So.3d 1000, 1002 (Fla. 1st DCA 2010). We are bound by the state constitution to make this determination in conformity with the Fourth Amendment of the United States Constitution, as interpreted by the United States Supreme Court.
 
 Holland v. State,
 
 696 So.2d 757, 759 (Fla.1997).
 

 The Florida Supreme Court has recognized three levels of police-citizen encounters: consensual encounters, investigatory detentions, and formal arrests.
 
 Popple v. State,
 
 626 So.2d 185, 185 (Fla.1993). An investigatory detention occurs when an officer makes “an official show of authority from which a reasonable person would conclude that he or she is not free to end the encounter and depart.”
 
 Dees v. State,
 
 564 So.2d 1166, 1167 (Fla. 1st DCA 1990). Such a detention is proper only when a law enforcement officer has “reasonable suspicion that the person has committed or is about to commit a crime.”
 
 Faunce v. State,
 
 884 So.2d 504, 506 (Fla. 1st DCA 2004). Otherwise, the detention violates the detainee’s Fourth Amendment rights, and any evidence obtained as a result of that detention is subject to suppression.
 
 See Popple,
 
 626 So.2d at 185, 188. The State properly concedes that the detention of the Nissan in the instant case constituted an investigatory stop, as the Nissan’s occupants were not free to leave once the officers blocked their vehicle’s exit.
 
 Cf. McCreary v. State,
 
 538 So.2d 1377, 1378 (Fla. 1st DCA 1989). Thus, the dispute in this case concerns whether the officers had reasonable suspicion to conduct the stop.
 

 An officer’s basis for conducting an investigatory stop must be more than “[a] hunch or mere suspicion.”
 
 Faunce,
 
 884 So.2d at 506;
 
 see Daniels v. State,
 
 543 So.2d 363, 366 (Fla. 1st DCA 1989) (holding that a “bare” or “gut” feeling that a person is engaged in criminal activity is insufficient to justify a stop and frisk). To show a sufficient basis for an investigatory stop, the officer must “be able to articulate the supporting facts,” and the facts must show a well-founded suspicion.
 
 Faunce,
 
 884 So.2d at 506. A reasonable or well-founded suspicion “is something less than probable cause, but more than an inchoate and unparticularized suspicion.”
 
 Rouse v. State,
 
 643 So.2d 696, 697 (Fla. 1st DCA 1994).
 

 To determine whether officers conducting an investigatory detention had a well-founded or reasonable suspicion of criminal activity, a court must examine the totality of the circumstances surrounding the detention.
 
 Faunce,
 
 884 So.2d at 506. Relevant factors include the following: “the time of day; the appearance and behavior of the suspect; the appearance and manner of operation of any vehicle involved; and anything incongruous or unusual in the situation as interpreted in light of the officer’s knowledge.”
 
 Huffman v. State,
 
 937 So.2d 202, 206 (Fla. 1st DCA 2006). Facts learned only in hindsight should not enter into the evaluation
 
 *660
 
 of the reasonableness of a search or seizure.
 
 See U.S. v. Martinez-Fuerte,
 
 428 U.S. 543, 565, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976) (explaining the purpose of the warrant requirement);
 
 Terry v. Ohio,
 
 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (acknowledging that “the notions which underlie both the warrant procedure and the requirement of probable cause remain fully relevant” in the context of determining the reasonableness of an investigatory stop). However, under the “fellow officer rule,” the information possessed by one officer in the chain of an investigation, including a 911 dispatcher, is imputed to the other officers for the purposes of assessing whether an investigatory stop is justified.
 
 See State v. Maynard,
 
 783 So.2d 226, 229 (Fla.2001).
 

 In this case, Appellant relies partly on the fact that the officers admitted in their testimony that they did not suspect any particular crime was occurring when they stopped the Nissan. The State argues that this testimony is irrelevant. To the contrary, case law holds that an officer “must be able to articulate in particular and objective terms his reasonable suspicion of criminal activity.”
 
 Palmer v. State,
 
 625 So.2d 1303, 1306 (Fla. 1st DCA 1993). Based on this principle, in determining whether reasonable suspicion for an investigatory stop existed, this Court has expressly considered the fact that an officer was not able to articulate facts relating to a specific criminal offense.
 
 See, e.g., Hill v. State,
 
 51 So.3d 649, 650-51 (Fla. 1st DCA 2011) (observing that the officer could not do so and noting that the circumstances the officer identified as prompting the stop were insufficient to establish reasonable suspicion). As a result, we weigh the officers’ inability to point to facts that suggested a particular crime had occurred, was occurring, or was about to occur against a conclusion that reasonable suspicion existed.
 

 The State argues that the Nissan’s attempt to leave the bank supports a conclusion that the officers had reasonable suspicion. It is proper to consider this factor, particularly if the evidence suggests that the Nissan left in “headlong flight,” which the United States Supreme Court has deemed “the consummate act of evasion.”
 
 Illinois v. Wardlow,
 
 528 U.S. 119, 121, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000). Typically, flight from the police justifies a stop when it is unprovoked and occurs in a high-crime area.
 
 See id.
 
 However, this Court has emphasized that flight from the police is simply one factor to be considered and that “reasonable suspicion of criminal activity is not established simply because a defendant leaves the scene when an officer nears.”
 
 Hill,
 
 51 So.3d at 651. Standing alone, flight is insufficient to give rise to a reasonable suspicion of criminal activity.
 
 See F.E.A. v. State,
 
 804 So.2d 528, 529 (Fla. 1st DCA 2002);
 
 Jean-Marie v. State,
 
 947 So.2d 484, 488 (Fla. 3d DCA 2006) (citation omitted). Additionally, when a vehicle drives away from the scene “in an unremarkable fashion,” the act of leaving the scene is not likely to give rise to a reasonable suspicion of criminal activity.
 
 See Hill,
 
 51 So.3d at 651.
 

 The State contends that the officers’ collective knowledge gave rise to a reasonable suspicion that “a person, or persons, in the Nissan was, or had been, influencing the customer, by force or otherwise, to withdraw a large amount of money payable to someone in the Nissan.” This argument strains the facts and may rely partly on hindsight. For example, the State notes in its brief that one of Appellant’s companions went inside the bank and said she was not going to jail, that the bank customer was Baker Acted, and that several arrests were made. The record
 
 *661
 
 indicates that these facts came to light after the Nissan was stopped. As a result, we do not consider them in our reasonable suspicion analysis.
 

 Importantly, the officers in this case were not able to articulate a basis for suspecting criminal activity, as they were not even able to state a crime they believed was occurring. As suggested above, this factor weighs heavily in favor of a conclusion that no reasonable suspicion existed. Moreover, had they named a crime they believed was occurring, there would have been insufficient evidence to support their suspicion. The customer’s activity inside the bank was strange, but the concern that this strange behavior and his interaction with the Nissan related to criminal conduct was not supported by any articulable facts. The Nissan’s attempt to leave the bank when the officers arrived does not tip the scale in favor of finding reasonable suspicion because the testimony indicates that the Nissan simply began to back out of a parking space.
 
 Cf. Hill,
 
 51 So.3d at 651 (declining to find reasonable suspicion of criminal activity based on a vehicle’s driving away from the scene in an “unremarkable fashion”). When all of the circumstances are considered, any suspicion that the people in the Nissan were improperly influencing the bank customer to withdraw money or were otherwise involved in a crime is highly speculative and properly characterized as a hunch.
 
 Cf. Cooks v. State,
 
 28 So.3d 147, 149 (Fla. 1st DCA 2010) (holding that officers lacked reasonable suspicion to detain a vehicle described in a 911 call where a hotel clerk reported that she felt unsafe as a result of an attempt by one of the vehicle’s occupants to open the door to the establishment after being asked to leave);
 
 Hall v. State,
 
 366 So.2d 865, 865 (Fla. 4th DCA 1979) (concluding that officers had only a “bare suspicion,” which did not authorize the detention of the suspects, where a retail store manager had reported that the suspects were acting in a “suspicious manner” and had visited the store several times that day without appearing interested in buying anything). As a result, we hold that the officers lacked reasonable suspicion to conduct an investigatory stop of the Nissan.
 

 As an alternative to arguing that the officers had reasonable suspicion for the stop, the State urges us to affirm on the basis of the community caretaking doctrine, claiming that it was proper to detain the Nissan to determine whether the occupants of the Nissan had placed anyone’s safety in jeopardy. Under the community caretaking doctrine, an officer may stop a vehicle without reasonable suspicion of criminal activity if the stop is necessary for public safety and welfare.
 
 Shively v. State,
 
 61 So.3d 484, 485-86, 2011 WL 2029622, at *1 (Fla. 2d DCA 2011);
 
 Gentles v. State,
 
 50 So.3d 1192, 1198-99 (Fla. 4th DCA 2010) (collecting examples). For example, an officer is permitted to stop a vehicle when it is being operated in an unusual manner even though no traffic violation is suspected.
 
 State v. Rodriguez,
 
 904 So.2d 594, 598 (Fla. 5th DCA 2005). The purpose of such a stop is to ascertain whether the driver of the vehicle is in need of assistance due to illness, tiredness, or impairment and to protect the motoring public from harm.
 
 See Shively,
 
 61 So.3d at 486, 2011 WL 2029622 at *2;
 
 Cady v. Dombrowski,
 
 413 U.S. 433, 441, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973). Such a stop is “totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute.”
 
 Cady,
 
 413 U.S. at 441, 93 S.Ct. 2523. Even a stop pursuant to an officer’s community caretaking responsibilities, however, must be based on specific articulable facts showing that the stop was necessary for the protection of the public.
 
 See Cas-
 
 
 *662
 

 tella v. State,
 
 959 So.2d 1285, 1292 (Fla. 4th DCA 2007). Here, if the officers had intended to stop the Nissan to check on the safety of its occupants or any person its occupants may have been threatening, the stop would have been based on sheer speculation, rather than articulable facts related to public safety. Accordingly, we reject the invitation to affirm this case based on the community caretaking doctrine.
 

 In sum, because the stop of the Nissan was not justified by either reasonable suspicion or the officers’ community caretak-ing functions, we reverse the denial of the motion to suppress. Because the motion to suppress is dispositive, we reverse the judgment and sentence appealed from and remand with directions to the trial court to grant the motion to suppress and to discharge Appellant for the offenses at issue in this case.
 

 REVERSED and REMANDED with directions.
 

 DAVIS and WETHERELL, JJ., concur.