NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

STATE OF FLORIDA,              )
                                     )
        Appellant,         )
                                     )
v.                               )      Case No. 2D16-22
                                     )
DIANE GODARD,           )
                                     )
        Appellee.          )
_____)

Opinion filed October 14, 2016.

Appeal from the Circuit Court for Pasco
County; Pat Siracusa, Judge.

Pamela Jo Bondi, Attorney General,
Tallahassee, and Susan D. Dunlevy,
Assistant Attorney General, Tampa, for
Appellant.

Howard L. Dimmig, II, Public Defender,
and Brooke Elvington, Assistant Public
Defender, Bartow, for Appellee.

SILBERMAN, Judge.

          The State appeals an order suppressing evidence in this prosecution

against Diane Godard for driving while license permanently revoked, driving under the

influence, and refusal to submit to testing.  We reverse the suppression order and

remand for further proceedings.

The following facts were adduced at the suppression hearing. On June 28, 2015, Deputy Knorr received a call regarding two dogs left in a white vehicle in the parking lot of a Carrabba's Restaurant. The caller indicated that the windows were up and that the car was not running. The temperature was in the 90s that day. When Deputy Knorr arrived at the restaurant, the manager ran out to the deputy's car and pointed out a vehicle that was just pulling out of the parking lot, indicating it was the vehicle in which the dogs were left. The manager advised the deputy that the dogs were left unattended for twenty to thirty minutes.

Deputy Knorr followed the vehicle and initiated a traffic stop as the vehicle was pulling into a Days Inn, approximately a mile from the restaurant. When the deputy approached, he saw the two dogs in the vehicle. Deputy Knorr testified that at the initial contact it was impossible to determine if the dogs were suffering or stressed. He described them as shaggy and admitted that the dogs were not dead or unconscious. Deputy Knorr first made contact with Godard to get information on who the driver was, and then he was going to investigate the welfare of the dogs.

No further evidence was presented regarding what transpired after Deputy Knorr made his initial contact with Godard, but the State ultimately charged her with driving while license permanently revoked, driving under the influence, and refusal to submit to testing. The State argued that the deputy had the right to speak to Godard and ask her to identify herself in investigating the welfare of the dogs as a violation of criminal statutes prohibiting animal cruelty or a county ordinance prohibiting animal cruelty.

The trial court determined that because the dogs did not appear to be in immediate distress when the deputy approached the vehicle, the deputy's continued detention of Godard violated her Fourth Amendment rights. To reach this conclusion, the trial court relied upon State v. Diaz, 850 So. 2d 435 (Fla. 2003). It was clear at the suppression hearing that the trial court believed that if the purpose of the stop had been resolved when the deputy first observed the dogs, then the deputy could make no contact with the driver. The trial court found that "the investigation was reasonable" but that upon the deputy viewing the dogs they showed "no signs of distress consistent with what he had reported, which is that there was 20 to 30 minutes of windows up, parked car in June, in Florida, in 90 degree temperature." Thus, the court ruled that Deputy Knorr could not make contact with Godard and granted the motion to suppress evidence.

On review of a trial court's ruling on a motion to suppress, the appellate court employs a deferential standard to findings of historical fact which are subject to reversal only if competent substantial evidence does not support the findings. Simpson v. State, 970 So. 2d 463, 464 (Fla. 2d DCA 2007); State v. Tanner, 915 So. 2d 762, 764 (Fla. 2d DCA 2005). However, review of mixed questions of law and fact and the trial court's legal conclusions is de novo. Simpson, 970 So. 2d at 464.

Once the purpose of a traffic stop has been "totally satisfied," an officer may not continue to detain a motorist. Diaz, 850 So. 2d at 438; see also Lanier v. State, 936 So. 2d 1158, 1161 (Fla. 2d DCA 2006). In Diaz, an officer stopped a motorist because the officer could not read the expiration date on a temporary license tag. 850 So. 2d at 436. When the officer approached the car, he could read the expiration date

and was satisfied the tag was valid before he made contact with the driver. Under that circumstance, the Florida Supreme Court determined that the deputy could not ask the motorist for identification after the purpose of the stop was satisfied. Id. at 439. Rather, after verifying the validity of the temporary tag, the deputy could legally make contact with the driver "only to explain to him the reason for the initial stop." Id. at 440.

But "when a vehicle has been lawfully stopped and the investigation relating to the stop has not yet been completed, it is not a violation of the Fourth Amendment for an officer to ask the driver to produce identification." Lanier, 936 So. 2d at 1161. In that instance, the officer may "retain possession of the identification and run a check of its validity and a warrants check." Id.

Here, the trial court erred in concluding that once the purpose of a stop is complete the deputy cannot make any contact with the driver. See Diaz, 850 So. 2d at 440. Thus, even if the purpose of the stop to check on the welfare of the dogs and, in doing so, to determine whether Godard had committed animal cruelty had been completed, Deputy Knorr could legally make contact with Godard to explain the reason for the stop. And, as the State asserts, an explanation for the stop before the deputy left would seem to also comport with common courtesy and good public relations, as well as notifying Godard that she was free to leave. Godard correctly concedes that Diaz permits an officer to make contact for the purpose of explaining the basis for the stop.

We do not know from the evidence presented whether an initial contact with Godard would have provided Deputy Knorr with reasonable suspicion to continue the detention for a DUI investigation. In any event, the trial court erred in determining

- 4 -

that Deputy Knorr was obligated to simply walk away from the vehicle and make no contact with the driver.

In addition, the deputy's testimony does not support the trial court's conclusion that the purpose of the stop was complete once the deputy saw the shaggy dogs in the vehicle. The deputy testified that he was just beginning his investigation and that when he first looked into the vehicle it was impossible to tell if the dogs were suffering. He wanted to make contact with the driver to have her identify herself and then check on the dogs. The officer stated that while the dogs were not dead or unconscious, he could not determine from his initial observation whether they were suffering or in pain. Thus, if the purpose of the stop had not been satisfied, Deputy Knorr could legally ask Godard for identification and run a check on its validity. See Lanier, 936 So. 2d at 1161; see also Diaz, 850 So. 2d at 439 (reiterating that once the purpose of the stop has been "clearly and unarguably satisfied" continued detention would be improper). And although no evidence was before the court on what happened after the deputy made contact with Godard, based on the charges it would appear that once Deputy Knorr checked Godard's driver's license he would have discovered that her license had been permanently revoked.

In support of the trial court's suppression order, Godard argues that we can employ the tipsy coachman doctrine to affirm the order. See Robertson v. State, 829 So. 2d 901, 906 (Fla. 2002) (stating that the "tipsy coachman" doctrine permits an appellate court to affirm a trial court's ruling that reaches the right result based on the wrong reason if the record contains evidence or another legal theory to support the result). Godard contends that "[a]ssuming *arguendo* that the deputy could conduct a

traffic stop based upon a theory of animal cruelty, he acted upon a tip from an unknown source."  She then relies upon the legal principle that information of illegal activity from an anonymous tipster must be independently corroborated prior to the stop.  See Baptiste v. State, 995 So. 2d 285, 292 (Fla. 2008); Simms v. State, 51 So. 3d 1264, 1266 (Fla. 2d DCA 2011).

In this case, we are not dealing with an anonymous tipster but a citizen informant.  Information from a citizen informant "is at the high end of the tip-reliability scale" because the motivation is the desire to further justice rather than monetary gain.  Dep't of Highway Safety & Motor Vehicles v. Ivey, 73 So. 3d 877, 881 (Fla. 5th DCA 2011) (quoting State v. Evans, 692 So. 2d 216, 219 (Fla. 4th DCA 1997)).  Information from a citizen informant is presumed reliable, and thus corroboration is unnecessary.  Id.  Further, the actual name of the informant need not be known if the informant's identity is readily discoverable.  Id.

Here, a citizen placed a call regarding the dogs being left unattended in the vehicle with the windows up and the car not running.  Deputy Knorr did not testify whether the caller was anonymous or whether the manager was the caller.  When the deputy arrived, a man immediately approached the deputy and identified himself as the manager of the Carrabba's Restaurant.  He pointed out the vehicle with the dogs and advised that they had been left in the vehicle unattended for twenty to thirty minutes.  At the suppression hearing, defense counsel argued that testimony as to how long the dogs were in the car unattended was hearsay because the deputy agreed that a customer possibly could have told the manager that the dogs were in the vehicle for

twenty to thirty minutes. The trial court overruled the hearsay objection, and defense counsel did not argue that the manager was an anonymous informant.

Further, the manager had seen the vehicle himself with the dogs in it. The facts before the trial court show that the manager was a known citizen informant who made personal contact with the officer and pointed out the vehicle with the dogs that had been left unattended. Thus, we reject Godard's argument on appeal that was not made below that the manager was an anonymous tipster.

Accordingly, we reverse the suppression order because the trial court misinterpreted Diaz to conclude that if the purpose of the stop had been accomplished, then the deputy could make no contact with the driver. In addition, the facts testified to by the deputy did not indicate that the purpose of the investigation had concluded. On remand, Godard may file a second motion to suppress based on the deputy's actions after he made contact with her should she have a basis for such a motion.

Reversed and remanded.


CRENSHAW and BADALAMENTI, JJ., Concur.