Strafford
No. 2011-461

THE STATE OF NEW HAMPSHIRE

v.

ELLIOTT M. BELL

Argued: October 17, 2012
Opinion Issued: December 21, 2012

*Michael A. Delaney*, attorney general (*Jeffrey S. Cahill*, senior assistant attorney general, on the brief and orally), for the State.

*Brianna M. Sinon*, assistant appellate defender, of Concord, on the brief and orally, for the defendant.

HICKS, J. The defendant, Elliott M. Bell, appeals a decision of the Superior Court (*Brown*, J.) denying his motion to suppress evidence that he possessed less than one ounce of the controlled drug "ecstasy." *See* RSA 318-B:2 (2011) (amended 2011). We affirm.

I

The following facts are drawn from the trial court's order denying the defendant's motion to suppress, or are otherwise undisputed. On July 28, 2010, Dover Police Officers Matthew Boc and Paul Levin investigated a noise complaint at an apartment building in Dover. With the complainant's help, they traced the sound to one apartment and knocked on the door. After a voice inside said, "Come in," they entered and saw the defendant lying on the floor. The defendant looked at the officers and, after remaining on the floor for several seconds, stood and then sat on a sofa. Either the defendant or Boc turned the music off, and the officers explained that they were investigating a complaint about the noise. The defendant seemed to Boc to be "confused and disoriented."

After being asked to produce identification, the defendant initiated what Boc described as a "lengthy discussion" about the officers' right to make such a request. According to Boc, during this conversation the defendant's speech was slurred, he was sweating, and his eyes were darting from side to side. Boc explained that he needed to see the defendant's identification for the purpose of documenting the noise complaint, and told him that as soon as he produced it, "we would be on our way." The defendant eventually

gave Boc his identification. Thereafter, Boc observed a clear plastic bag on the defendant's person that contained irregularly shaped pink pills that did not resemble commonly sold medication. Boc then took the bag and observed that the pills were shaped like the cartoon character Hello Kitty, a shape that Boc understood from his training and experience to be consistent with ecstasy. The defendant was arrested and charged with possession of ecstasy.

## II

The defendant first argues that he was unlawfully seized under the State and Federal Constitutions when Officer Boc said the officers would be "on their way" as soon as the defendant produced identification. He contends that the trial court erred in concluding the police had the requisite reasonable suspicion that he was engaged in criminal activity, and that the evidence obtained following the seizure must be suppressed as the fruit of the poisonous tree.

We first address the defendant's argument under the State Constitution and rely on federal law only to aid in our analysis. *State v. Ball*, 124 N.H. 226, 231-33 (1983).

It is well settled that, "[i]n order for a police officer to undertake an investigatory stop, the officer must have a reasonable suspicion — based on specific, articulable facts taken together with rational inferences from those facts — that the particular person stopped has been, is, or is about to be, engaged in criminal activity." *State v. Richter*, 145 N.H. 640, 641 (2000) (quotation omitted). Reasonable suspicion may be less than the probable cause necessary to support an arrest or citation. *Id.* In reviewing the trial court's ruling that the police conduct was justified, we defer to its findings of historical fact unless those findings are clearly erroneous; we review *de novo*, however, the ultimate determination of whether, in view of those findings, reasonable suspicion existed. *Id.*

We assume, without deciding, that the defendant was seized when Officer Boc conditioned the officers' departure from his home upon his producing identification. We agree with the State, however, that the officers were justified in effecting a limited seizure of the defendant based upon reasonable suspicion that he was "disturbing the peace," *i.e.*, committing disorderly conduct. *See* RSA 644:2, III(a) (2007) (variant of disorderly conduct making it a crime to "purposely cause[] a breach of the peace, public inconvenience, annoyance or alarm, or recklessly create[] a risk thereof, by . . . making loud or unreasonable noises in a private place which can be heard in a public place or other private places, which noises would disturb a person of average sensibilities). Boc testified that the music was

"at an unreasonable level" when he entered the defendant's apartment. The defendant contends that "ongoing reasonable suspicion" was eliminated when the music was turned off. We disagree. Reasonable suspicion can relate to *past*, as well as present or future, criminal activity. An officer may ask a lawfully detained person "a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions." *State v. Michelson*, 160 N.H. 270, 274 (2010); *see State v. Parker*, 127 N.H. 525, 531 (1985); *Berkemer v. McCarty*, 468 U.S. 420, 439 (1984). Moreover, there is no indication that the police extended the encounter beyond what was minimally necessary to identify the defendant. *Cf. State v. McKinnon-Andrews*, 151 N.H. 19, 25 (2004) (adopting three-part test to determine when a police officer's questions exceed the scope of an initially valid investigatory stop). As the trial court noted, to the extent the encounter was prolonged, "it was due to the defendant's refusal to identify himself."

█ Because the New Hampshire Constitution is at least as protective of the defendant's rights in the context of seizing and questioning a suspect after developing reasonable suspicion, *see, e.g.*, *Florida v. Royer*, 460 U.S. 491, 498 (1983) (plurality) ("[R]easonable suspicion of criminal activity warrants a temporary seizure for the purpose of questioning limited to the purpose of the stop."), we reach the same conclusion under a federal analysis.

III

The defendant next argues that the seizure of the plastic bag containing ecstasy pills did not comport with applicable principles under the plain view doctrine. Again, we first address the defendant's contention under the State Constitution and rely on federal law only to aid in our analysis. *Ball*, 124 N.H. at 231-33.

██ Under the plain view doctrine, as applied to the seizure of drugs, the State must prove, by a preponderance of the evidence: (1) the initial intrusion which afforded the view was lawful; and (2) the incriminating nature of the evidence was immediately apparent. *State v. Davis*, 149 N.H. 698, 700-01 (2003); *State v. Nieves*, 160 N.H. 245, 250 (2010) (holding that there is no longer an "inadvertency" requirement under the State Constitution with respect to "drugs, weapons, and other items dangerous in themselves" (quotation omitted)). Because we have determined that the initial intrusion and inquiry as to the defendant's identification were lawful, we now address the second prong.

The "immediately apparent" requirement is met if, at the time of the seizure, the officer has probable cause to believe that the

object seized is incriminating evidence. The probable cause required under the plain view exception is at least as great as that required to support a warrant, but need not be greater. In addition, the expertise and experience of the law enforcement officer are relevant to the probable cause determination. Officers are entitled to draw reasonable inferences from the facts available to them in light of their knowledge and prior experience. Thus, in some situations, a trained policeman's observations of certain types of contraband will be deemed sufficient to meet the requirements of the plain view doctrine.

*Davis*, 149 N.H. at 701-02 (quotations and citations omitted).

██ The defendant argues that Officer Boc did not have probable cause to believe that the bag contained incriminating evidence until he took it from the defendant and further manipulated and examined it — *i.e.*, after it was already seized. We disagree. Before he seized the bag, Officer Boc observed that the pills in it were abnormally shaped and partially crumbled. Boc testified that he knew from his training and experience that ecstasy pills are manufactured to have different shapes and patterns — leading to a reasonable inference that the pills were not prescription or over-the-counter pills or vitamins. *See id.* Boc also recognized the bag as a "corner [b]aggie," a plastic bag that is tied in a way that confines its contents to one corner and is associated with storing illicit drugs. Boc testified that, in his training and prior experience, he had seen that type of packaging used. The defendant's abnormal behavior was also suggestive of recent drug use: he did not initially respond to the officers' presence in his home; he appeared "confused" and "disoriented"; he was "sweating profusely"; and his eyelids "appeared very heavy" at times but his eyes darted back and forth at others. Considered as a whole, these circumstances supplied probable cause to believe the bag contained illicit drugs, therefore justifying its seizure.

Because the New Hampshire Constitution is at least as protective of the defendant's rights in the context of the plain view exception to the warrant requirement, *see, e.g., United States v. Corral*, 970 F.2d 719, 725 (10th Cir. 1992) (although "package was opaque and its contents not readily visible," its incriminating character was immediately apparent to "veteran police officer experienced in narcotics cases"), we reach the same conclusion under a federal analysis.

*Affirmed.*

DALIANIS, C.J., and CONBOY, LYNN and BASSETT, JJ., concurred.