2d Circuit Court — Lebanon District Division
No. 2012-392

THE STATE OF NEW HAMPSHIRE

v.

BRADFORD DALTON

Argued: June 4, 2013
Opinion Issued: August 21, 2013

*Michael A. Delaney*, attorney general (*Diana E. Fenton*, assistant attorney general, on the brief and orally), for the State.

*Thomas Barnard*, assistant appellate defender, of Concord, on the brief and orally, for the defendant.

DALIANIS, C.J. The defendant, Bradford Dalton, was convicted of driving under the influence (DUI) — third offense following a bench trial in the 2d Circuit Court — Lebanon District Division (*Cirone*, J.). *See* RSA 265-A:2

(Supp. 2012) (amended 2012). On appeal, he argues that the trial court erred in denying his motion to suppress. We affirm.

The following facts are derived from the record of the suppression hearing. At about 7:40 p.m. on June 17, 2010, Officer Gordon Cunningham was on patrol in Lebanon when he observed a vehicle that did not appear to have a New Hampshire Division of Motor Vehicles (DMV) inspection sticker. *See* RSA 266:1, II (Supp. 2012). Consequently, the officer activated his blue lights and stopped the vehicle, which was being driven by the defendant. Upon making contact with the defendant, the officer noticed that the vehicle displayed a transparent DMV temporary inspection sticker, indicating that it had passed the safety portion of the mandatory inspection, but had failed the emissions system portion. *See* RSA 266:59-b, V (Supp. 2012). Such inspection stickers contain a number indicating the month in which the inspection took place, but do not denote the year. The sticker had a number 5, indicating that it was issued in May.

When an individual is issued a transparent inspection sticker, that person has sixty days within which to correct the emissions problem. *See id.* Because the officer could not determine the year in which the inspection sticker was issued and, therefore, whether it was valid, he asked the defendant for his license, registration, and the inspection paperwork. While speaking with the defendant, the officer smelled a moderate odor of an alcoholic beverage coming from the vehicle. The defendant was subsequently charged with DUI — third offense.

Before trial, the defendant moved to suppress evidence derived from the stop. The trial court denied the motion, concluding that the officer was "permitted to request the inspection station's paperwork to determine whether [the defendant] was still within the 60 day window to repair the emissions problem because the commencement date of the 60 day period is not readily apparent from the sticker." Based upon the State's offer of proof, the trial court found the defendant guilty. This appeal followed.

On appeal, the defendant argues that the officer violated his rights under Part I, Article 19 of the New Hampshire Constitution and the Fourth and Fourteenth Amendments to the United States Constitution by continuing the motor vehicle stop after realizing that the vehicle displayed an inspection sticker. The State counters that the officer's request for the driver's license, registration, and garage inspection report were all reasonably related to the initial justification for the stop.

When reviewing a trial court's ruling on a motion to suppress, we accept the trial court's factual findings unless they lack support in the record or are clearly erroneous, and we review its legal conclusions *de novo. State v.*

*Schultz*, 164 N.H. 217, 221 (2012). We first address the issues under the State Constitution and rely on federal law only to aid in our analysis. *State v. Ball*, 124 N.H. 226, 231-33 (1983).

■■ Part I, Article 19 of the State Constitution protects citizens from unreasonable seizures. N.H. CONST. pt. I, art. 19. "A warrantless seizure is *per se* unreasonable unless it falls within a recognized exception to the warrant requirement." *State v. Licks*, 154 N.H. 491, 492-93 (2006). The exception at issue here is that for investigatory stops. *See Terry v. Ohio*, 392 U.S. 1, 21 (1968). "[I]n order for a police officer to undertake an investigatory stop, the officer must have a reasonable suspicion — based on specific, articulable facts taken together with rational inferences from those facts — that the particular person stopped has been, is, or is about to be, engaged in criminal activity." *State v. Bell*, 164 N.H. 452, 454 (2012) (quotation omitted). Moreover, "[a]n investigatory stop must be narrowly tailored and last no longer than necessary to effectuate its purpose." *State v. Smith*, 154 N.H. 113, 116 (2006).

The defendant does not challenge the propriety of the initial stop based upon the officer's mistaken perception that the vehicle did not display an inspection sticker. Rather, he asserts that upon observing the transparent inspection sticker, reasonable suspicion was dispelled and, therefore, the officer could take no further action beyond explaining the mistake to the defendant and informing him that he was free to leave. *See, e.g., United States v. Jenkins*, 452 F.3d 207, 213 (2d Cir. 2006).

■ We disagree with the defendant's characterization of the scope of the stop. Here, as the trial court concluded, the officer did not stop the defendant to determine merely whether the vehicle displayed an inspection sticker; he stopped the defendant to determine whether the vehicle displayed a *valid* inspection sticker, as required by statute. *See* RSA 266:1, II. Because the officer could not determine whether the transparent sticker was a *valid* inspection sticker, he was permitted to "engag[e] in facially innocuous dialog which a detained motorist would not reasonably perceive as altering the fundamental nature of the stop." *State v. McKinnon-Andrews*, 151 N.H. 19, 25 (2004) (quotation omitted). Since his request for the defendant's license, registration, and inspection paperwork was "reasonably related to the initial justification for the stop," it was not improper. *Id.*

■ "States have a vital interest in ensuring that only those qualified to do so are permitted to operate motor vehicles, that these vehicles are fit for safe operation, and hence that licensing, registration, and vehicle inspection requirements are being observed." *Delaware v. Prouse*, 440 U.S. 648, 658

(1979). "There are few, if any, standard operating procedures which nearly every police officer employs more routinely than that of requesting the driver's name and vehicle registration when first addressing a driver stopped for operating a vehicle that may be involved in illegal activity." *State v. Glaude*, 131 N.H. 218, 222 (1988).

The defendant cites several cases from other jurisdictions to support his assertion that the officer was not permitted to inquire further once he observed the transparent inspection sticker. We find these cases to be inapposite. For example, in *United States v. McSwain*, 29 F.3d 558 (10th Cir. 1994), an officer stopped a vehicle because the expiration date on the temporary registration sticker appeared to be covered with reflective tape. *McSwain*, 29 F.3d at 560. Before reaching the vehicle, however, the officer saw that the sticker was valid and had not expired. *Id.* Because the officer no longer had an "objectively reasonable articulable suspicion" that a traffic violation had occurred, his questioning of the driver was unlawful. *Id.* at 561-62 (quotation omitted). Similarly, in *State v. Diaz*, 850 So. 2d 435 (Fla. 2003), an officer stopped the defendant because he was unable to read the expiration date on the vehicle's temporary tag. *Diaz*, 850 So. 2d at 436. Upon approaching the car, the officer was able to read the date and was satisfied that the temporary tag was valid. *Id.* at 437. Once the officer determined the validity of the tag, the purpose for the stop was satisfied and the continued detention of the driver and request for information was improper. *Id.* at 438-39. Here, however, the officer's purpose for the stop, to check whether the vehicle was properly inspected, was not satisfied merely by his observation of the transparent inspection sticker.

The defendant argues that if we affirm this case, then "any person whose vehicle passes the safety portion of the inspection but fails the on-board diagnostic emissions portion, and who is thus issued a clear, 60-day inspection sticker, could be pulled over at any time during that 60-day period." We disagree. Here, the officer did not stop the defendant because he saw a transparent inspection sticker; the officer stopped the defendant because he did not see *any* inspection sticker. Thus, we need not decide today whether the police may stop *any* vehicle displaying a transparent inspection sticker.

■ "The bare essentials of a 'routine traffic stop' consist of causing the vehicle to stop, explaining to the driver the reason for the stop, verifying the credentials of the driver *and the vehicle*, and then issuing a citation or a warning." 4 W. LAFAVE, SEARCH AND SEIZURE, A TREATISE ON THE FOURTH AMENDMENT § 9.3(c), at 507 (5th ed. 2012) (emphasis added). Nothing more occurred here. We, therefore, conclude that the officer's

conduct in requesting the defendant's license, registration, and inspection paperwork was "routine" and was not an unconstitutional continuation of the motor vehicle stop.

The Federal Constitution provides no greater protection than the State Constitution in this area. *Licks*, 154 N.H. at 495. Accordingly, we reach the same result under the Federal Constitution as we do under the State Constitution.

*Affirmed.*

HICKS, CONBOY, LYNN and BASSETT, JJ., concurred.