# United States Court of Appeals
## For the First Circuit

No. 16-2005

UNITED STATES OF AMERICA,

Appellee,

v.

CHRISTIAN DENT,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. D. Brock Hornby, U.S. District Judge]

Before

Howard, Chief Judge,
Kayatta and Barron, Circuit Judges.

Jeffrey W. Langholtz on brief for appellant.
Julia M. Lipez, Assistant United States Attorney, and Richard
W. Murphy, Acting United States Attorney, on brief for appellee.

August 8, 2017

**KAYATTA**, **Circuit Judge**.    Defendant Christian Dent appeals the district court's denial of his motion to suppress evidence that was seized from his apartment pursuant to a warrant. While two law enforcement agents were seeking the warrant, other agents entered the apartment, detained the individuals who were present, and, in the ostensible course of securing the premises, came upon some of the evidence that was later seized.    Dent contends that the officers exploited their presence in the apartment in so egregious a manner as to foreclose the application of any relevant exceptions to the Fourth Amendment's exclusionary rule.    Because it is undisputed that the warrant was not based on information gleaned from the warrantless seizure and sweep of Dent's apartment, and because the officers' conduct did not rise to a level that might arguably justify a departure from the normal rules governing suppression, we affirm the district court's ruling.

## I.

On November 11, 2014, law enforcement agents monitoring a court-authorized wiretap determined that a cell phone associated with an individual named Troy Jones appeared to be moving from New York to Maine.    Eventually, the phone was traced to the Lewiston-Auburn area of Maine.    On November 12, the wiretap intercepted a call from Jones--using a different phone than the one that the agents had been tracking--to Dent.    During that call, Dent stated

that "he fixed it, he tied that shit up, gave it to [Jones's girlfriend, later identified as Dominique Jackson,] and told her to put it up." Dent further noted that Jackson was "still in the crib."

Federal Bureau of Investigation Special Agent Patrick Clancy, who had been overseeing the wiretap operation and monitoring the wiretap on the days in question, testified at the suppression hearing that he understood the conversation to mean that Jackson was in an apartment associated with Dent and that she possessed individually bagged allotments of crack cocaine, which Dent had prepared from powder cocaine. Clancy also testified that he believed that Dent was not in the apartment at the time of the intercepted call.

Based on his understanding of the situation, Clancy decided not only to apply for a warrant to search the apartment, but also "[t]o secure the residence in advance of obtaining a search warrant." Clancy testified that his decision was informed by concern that the ready-to-sell drugs would be moved, as well as concern about the safety of officers if they first arrived to execute the warrant after Dent returned. Clancy further testified that he considered but decided against establishing a perimeter around the apartment building, as Dent had previously been able to recognize and "identif[y] some of the surveill[ing] [officers] on the street by name"; Clancy stated that he "was concerned that an

occupant inside or somebody passing by [the residence] might see law enforcement in the area, [and] alert Mr. Dent or others to the presence of law enforcement," which might thereby lead to the disposal or relocation of the drugs that they suspected to be in the apartment. Clancy also acknowledged that he was "looking for a conclusion to the investigation" of Dent, i.e., that he was "hoping to catch somebody with a load of drugs," and that the authorization for the relevant wiretap was about to expire.

While Clancy and another agent prepared the search warrant application, three police officers went to Dent's apartment for the stated purpose of "preserv[ing] any evidence in anticipation of th[e] search warrant." One officer stationed himself outside of the apartment building, while the other two officers entered the building and knocked on the door of the apartment in question. The officers were wearing clothing and gear that indicated that they were law enforcement agents, but they did not identify themselves as such when they knocked on the door. When Jackson opened the door and saw the officers, she tried to slam the door shut, but the officers pushed their way into the residence, forced Jackson to the ground, and placed her in handcuffs.

While they were subduing Jackson, the officers heard music that had been playing elsewhere in the apartment decrease in volume, which led them to believe that another individual was

present.  With guns drawn, the officers began to "clear every room in the apartment."  When they reached the final room to be cleared, they opened the closed door and observed an individual--later identified as Jonathan Banyan--attempting to stuff something under an air mattress.  After placing Banyan in handcuffs, the officers "searched the vicinity of where he had his hand underneath the air mattress and saw a baggie of what [they] believed at the time was drugs," which they "left" undisturbed.  According to one of the officers, they looked under the air mattress "[t]o make sure the room was safe," but did not "search for any other contraband during the security sweep" because they did not have a warrant.

After the officers finished their sweep of the apartment, they detained Jackson and Banyan in separate rooms and waited for the warrant to be issued.  During this time, the officer who had been stationed outside of the building joined the other officers inside, as did at least one additional officer who had not been on site for the initial entry.  Upon issuance and execution of the search warrant several hours after the initial entry, officers seized various pieces of evidence from the apartment.  In addition to "126.1 grams of cocaine base . . . found in a package inside of a black bag," officers discovered an unloaded revolver in the kitchen ceiling, small quantities of cocaine base scattered throughout the master bedroom, approximately 80.3 grams of cocaine base in the bathroom ceiling,

approximately eight grams of heroin inside a cigarette box, and a digital scale with drug residue in a kitchen closet.

After the district court denied Dent's motion to suppress the evidence that had been seized from the apartment, Dent pled guilty to one count of conspiracy to possess with intent to distribute cocaine and twenty-eight grams or more of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 846. Dent was subsequently sentenced to 114 months of imprisonment and five years of supervised release. However, Dent's guilty plea was conditional, preserving his right to pursue this appeal of the district court's refusal to suppress the evidence seized pursuant to the warrant.

## II.

In reviewing a district court's disposition of a motion to suppress, we examine the court's factual findings for clear error, while we consider any legal conclusions, including the court's application of law to facts, de novo. United States v. Fermin, 771 F.3d 71, 76–77 (1st Cir. 2014). "To succeed on appeal, [the defendant] must show that no reasonable view of the evidence supports the district court's decision." United States v. Morales-Aldahondo, 524 F.3d 115, 119 (1st Cir. 2008).

The Fourth Amendment requires suppression not only of evidence seized during an unlawful search, but also of evidence "that is the product of the primary evidence, or that is otherwise

acquired as an indirect result of the unlawful search." Murray v. United States, 487 U.S. 533, 536-37 (1988). However, under the "independent source" exception to the Fourth Amendment's exclusionary rule, "evidence acquired by an untainted search which is identical to . . . evidence unlawfully acquired" is admissible. Id. at 538 (emphasis omitted). Accordingly, "[w]hether the initial entry [into a home] was illegal or not is irrelevant to the admissibility of the challenged evidence" where "there was an independent source for the warrant under which that evidence was seized." Segura v. United States, 468 U.S. 796, 813-14 (1984) (plurality opinion); see also Murray, 487 U.S. at 541-42.

The district court denied Dent's motion on independent-source grounds, concluding that there was no evidence that either the warrant or the decision to seek the warrant was tainted by what the officers saw during the initial entry. The court found that "the process [of applying for a warrant] had already been initiated based upon the wiretap and the preceding information" and "the drugs observed under the air mattress were not . . . included in the affidavit [supporting the warrant application], nor was anything else that was seen or observed in the apartment during that initial protective sweep."

Dent's appeal does not dispute these findings, nor does it contest the validity of the later-issued warrant.[1]  Instead, Dent pursues two quite different approaches.

Dent's primary argument is that the officers' warrantless entry, and actions subsequent to that entry, were so egregious as to foreclose application of the independent-source exception.  In support of his position, Dent points to United States v. Madrid, 152 F.3d 1034 (8th Cir. 1998), in which the Eighth Circuit vacated the denial of a motion to suppress on the ground that the inevitable-discovery exception did not apply, id. at 1041.[2]  That case involved officers who entered a house without a warrant and, in the course of performing a "'security sweep,'" id. at 1036, "went upstairs and downstairs on two or three occasions, detained and searched the occupants, seized wallets and placed them in envelopes marked 'evidence,' and leafed through personal mail and a notebook," id. at 1040.  Information gleaned from this warrantless entry and sweep was then included in the

_____

[1] Citing Segura's admonition regarding the "irrelevan[ce]" of the legality of the officers' entry, seizure, and sweep in deciding the independent-source question, see 468 U.S. at 813–14, the district court made no finding in that regard for the purposes of the independent-source inquiry.  Therefore, "we proceed under the assumption that the officers' [actions] . . . w[ere] improper." See United States v. Rose, 802 F.3d 114, 123 (1st Cir. 2015).

[2] The inevitable-discovery exception is a "close relative" of the independent-source exception.  See, e.g., United States v. Siciliano, 578 F.3d 61, 68 n.4 (1st Cir. 2009) (citing Murray, 487 U.S. at 539).

affidavit used to secure a warrant, pursuant to which the house was formally searched.  Id. at 1036.

Faced with these facts, the court in Madrid opted not to rest its decision on whether, after "excising illegally obtained information from the warrant application, . . . the warrant was supported by probable cause [and] the decision to grant the warrant was unaffected by the illegally obtained information."  Id. at 1040.  Instead, the court expressed but did not resolve doubts about those questions, and proceeded to hold that the results of the warranted search could not be admitted under the inevitable-discovery exception due to "the severity of the police misconduct."  Id. at 1041.

Whether we would follow Madrid we need not decide today. For one thing, the officers' effort to confirm what Banyan was attempting to hide under the mattress falls short of the blatant search through personal effects in Madrid.  Furthermore, the established chronology of events in this case eliminates any uncertainty about the provenance of the information that provided probable cause to secure the warrant.  In short, neither of the two factors present in Madrid that might justify a refusal to apply the independent-source exception are present here.

Dent's second argument is that the warranted search was not truly independent of the warrantless entry and sweep because, had the officers not earlier entered and seized the premises,

Banyan (and the drugs that he had tried to hide under the air mattress) would have been gone from the apartment by the time the warrant was executed.[3]  As Dent points out, we have previously recognized that "[t]he Segura court did not consider the consequences if the seizure itself, by preventing loss or destruction of the property by freezing it in situ, might contribute to the discovery, except to require more than speculation that this was the fact."  United States v. Palumbo, 742 F.2d 656, 669 (1st Cir. 1984) (opinion for rehearing) (per curiam).  Even assuming that we would entertain a suppression argument based on our observation in Palumbo, Dent's argument would fail because he has produced no evidence to show that Banyan and the bag of drugs would have been absent from the apartment at the time of the warranted search.  Instead, he says only that we should take at "face value both the exigency arguments made by the government and the suppression testimony of [the] law enforcement officers."  Yet the arguments and testimony to which Dent refers are based on the "reasonable belief[s]" of police officers given the information available to them at the time of the warrantless entry.  See United States v. St. Pierre, 488 F.3d 76, 79 (1st Cir. 2007).  Thus, the government's claim of exigent circumstances

---

[3] We note that Dent makes no argument in this regard about the other evidence seized from the apartment, including the 80.3 grams of cocaine base discovered in the bathroom ceiling.

cannot, by itself, establish that Banyan and the bag of drugs would have left the apartment were it not for the earlier entry and seizure.  All in all, we do not agree with Dent that the independent-source exception, as described in <u>Segura</u> and <u>Murray</u>, is inapplicable to this case.

We therefore agree with the district court that the evidence seized from the apartment had a sufficiently independent source to deny Dent's motion to suppress.  Because we affirm the district court's ruling on independent-source grounds, we decline to decide whether the government established that exigent circumstances justified the initial warrantless entry.

## III.

For the foregoing reasons, we <u>affirm</u> the district court's denial of Dent's motion to suppress.