# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2018-0683, <u>State of New Hampshire v. Ronald Welch</u>, the court on November 26, 2019, issued the following order:**

Having considered the briefs and oral arguments of the parties, the court concludes that a formal written opinion is unnecessary in this case. The defendant, Ronald Welch, appeals his conviction for possession of a controlled drug. <u>See</u> RSA 318-B:2, I (2017). The defendant argues that the Superior Court (<u>Nicolosi</u>, J.) erred in denying his motion to suppress his statements to police and the drugs found in his car because: (1) the police officer's questions impermissibly expanded the scope of the traffic stop; and (2) the police officer lacked a reasonable articulable suspicion to justify a drug-offense investigation. We affirm.

The pertinent facts are as follows. On April 21, 2018, a detective with the Manchester Police Department was conducting surveillance of a high crime area in Manchester. During this surveillance, the detective observed the defendant waiting alone in a car for approximately ten minutes. The detective then observed a woman cross the street and enter the passenger side of the defendant's car. Based on the woman's numerous past encounters with the detective and members of the Manchester Police Department, the detective was able to identify her as a known prostitute and drug user. The detective observed the pair frequently moving in the vehicle, often turning toward the center console. Although the detective was unable to see the hands of the defendant or the woman, the detective perceived that the pair were either showing or exchanging something. After approximately three to five minutes, the woman exited the car.

As the defendant pulled away from the curb, the detective observed that he failed to use his turn signal. After turning onto Hall Street, the defendant pulled over, got out of the vehicle, and readjusted something in the vehicle's backseat. As the defendant resumed driving, he again failed to use his turn signal. After the defendant failed to stop at a stop sign, the detective initiated a traffic stop.

The detective noticed the defendant appeared very nervous and initially could not locate his driver's license. The detective asked the defendant where he was coming from. The defendant stated that he was coming from seeing the woman that the detective had observed entering the defendant's car. The

detective asked the defendant if he had gone into the woman's apartment, and the defendant answered that he had. Knowing the defendant was lying about whether he had entered the woman's apartment, the detective asked the defendant to exit his vehicle. The detective informed the defendant that he also knew the woman, and that he believed the pair had just engaged in a drug transaction. At that point, the detective observed a change in the defendant's mannerisms: the defendant began to look down and away from the detective. The detective then asked the defendant if he had any drugs. The defendant stated he did not have drugs "on his person." Finding this answer oddly specific, the detective followed up by asking whether the defendant had drugs in his car. The defendant stated there was heroin in his car. The drugs were seized and the defendant was arrested. Prior to trial, the defendant moved to suppress his statements to the police and the drugs seized from his vehicle. The trial court denied the motion, finding that the detective's questions about drugs were justified by reasonable suspicion of criminal conduct.

On appeal, the defendant challenges the denial of his motion to suppress under both the State and Federal Constitutions. We first address the defendant's claims under the State Constitution and rely upon federal law only to aid our analysis. State v. Ball, 124 N.H. 226, 231-33 (1983). When reviewing the trial court's order on a motion to suppress, we accept the court's factual findings unless they lack support in the record or are clearly erroneous. State v. Tarasuik, 160 N.H. 323, 327 (2010). We review the trial court's legal conclusions de novo. Id.

First, the defendant argues that the detective's initial questions about where the defendant was coming from and where he met the woman impermissibly expanded the scope of the traffic stop. The defendant, while conceding that the initial stop was justified because of his traffic violations, argues that the detective impermissibly expanded the scope of the stop to include questions regarding drugs, without having reasonable suspicion of drug-related activity. The State counters that these initial questions were reasonably related to the initial justification for the stop. In the alternative, the State argues that, even if the detective's initial inquiries were not reasonably related to the justification for the initial stop, they were "facially innocuous" and supported by reasonable suspicion that the defendant was engaged in illegal drug activity. We agree with the State that the detective's initial inquiries did not impermissibly expand the scope of the stop because they were "facially innocuous."

To determine whether an officer's inquiry impermissibly expanded the scope of a valid traffic stop, we examine "whether: (1) the question is reasonably related to the initial justification for the stop; (2) the law enforcement officer had a reasonable articulable suspicion that would justify the question; and (3) in light of all the circumstances, the question impermissibly prolonged the detention or changed its fundamental nature."

2

State v. McKinnon-Andrews, 151 N.H. 19, 25 (2004). In McKinnon-Andrews, we observed that:

> [i]f the question is reasonably related to the purpose of the stop, no constitutional violation occurs. If the question is not reasonably related to the purpose of the stop, we must consider whether the law enforcement officer had a reasonable, articulable suspicion that would justify the question. If the question is so justified, no constitutional violation occurs. In the absence of a reasonable connection to the purpose of the stop or a reasonable, articulable suspicion, we must consider whether in light of all the circumstances and common sense, the question impermissibly prolonged the detention or changed the fundamental nature of the stop.

Id. at 25 (quotation and brackets omitted).

During an investigatory stop, an officer may engage in "facially innocuous dialog which a detained motorist would not reasonably perceive as altering the fundamental nature of the stop." Id. (quotation omitted). In doing so, an officer may ask a moderate number of questions to obtain identifying information and to confirm or dispel his suspicions. See, e.g., State v. Szczerbiak, 148 N.H. 352, 355 (2002). We have held that an officer's request for a driver's license, registration, and inspection paperwork was, in the context of a traffic stop, reasonable, "facially innocuous dialog." State v. Dalton, 165 N.H. 263, 264-65 (2013). The First Circuit Court of Appeals has held that "merely posing a few prosaic questions about the [defendant's] itinerary: where he and his passenger had been, where they were going, and whether they had stopped along the way," was routine questioning, "even when not directly related to the violations that induced the stop in the first place." United States v. Chhien, 266 F.3d 1, 9 (1st Cir. 2001).

Here, the detective asked the defendant where he was coming from, and, based on the defendant's answer that he had been with a known drug user and prostitute, the detective asked related follow-up questions. The initial questions posed by the detective are similar to the routine questions approved by the First Circuit in Chhien. Thus, we find that the initial questions are facially innocuous, and that a detained motorist would not reasonably perceive them as altering the fundamental nature of the stop. See McKinnon-Andrews, 151 N.H. at 25; Chhien, 266 F.3d at 9. Because the initial questions posed by the detective are facially innocuous, he did not impermissibly expand the scope of the traffic stop by asking them.

Next, the defendant argues that, even if the detective's initial inquiries were permissible, the detective's subsequent questioning regarding drugs fundamentally altered the scope of the stop, and the detective lacked

reasonable suspicion to ask such questions. The State counters that the detective's drug inquiries were reasonably related to the initial justification for the traffic stop. Alternatively, the State argues that even if the drug inquiries were not related to the initial justification for the stop, the detective had a reasonable articulable suspicion of drug activity when he inquired about drugs. Because the trial court found that the initial justification for the traffic stop was the defendant's traffic violations, in order for the detective to pursue his subsequent line of questioning about drugs, he needed a reasonable articulable suspicion that the defendant was engaged in drug-related criminal activity. See McKinnon-Andrews, 151 N.H. at 25 (finding that officer's drug-related question regarding the contents of the defendant's vehicle during traffic stop was unrelated to the initial justification for the stop and therefore required reasonable suspicion). We agree with the State that the detective had reasonable articulable suspicion sufficient to question the defendant about drugs.

"Reasonable articulable suspicion refers to suspicion based upon specific, articulable facts taken together with rational inferences from those facts—that the particular person stopped has been, is, or is about to be, engaged in criminal activity." Id. at 25-26 (quotation omitted). When determining whether an officer's suspicions meet this standard, "we consider the articulable facts in light of all surrounding circumstances, keeping in mind that a trained officer may make inferences and draw conclusions from conduct that may seem unremarkable to an untrained observer." Id. at 26. "The articulated facts must lead somewhere specific, not just to a general sense that this is probably a bad person who may have committed some kind of crime." Id. (quotation omitted). "The officer's suspicion must have a particularized and objective basis in order to warrant that intrusion into protected privacy rights." Id. "That observed activity could be consistent with both guilty and innocent behavior, however, does not mean that an officer must rule out innocent explanations before proceeding." State v. Turmel, 150 N.H. 377, 381 (2003).

We have recognized that, although "a person's mere presence in a high-crime area, even at a late hour, is not a sufficient basis, standing alone, to justify a brief investigatory detention, the hour and the character of the area may cast an individual's own conduct in a more suspicious light." State v. Vadnais, 141 N.H. 68, 70-71 (1996); see also State v. Roach, 141 N.H. 64, 66 (1996) (weighing facts that defendant was nervous and in a high-crime area as factors in favor of finding reasonable suspicion). Moreover, we have held that a police officer's specialized training relating to drugs may be considered when conducting a reasonable suspicion analysis. See Turmel, 150 N.H. at 381-82 (considering a police officer's drug recognition certification in determining whether the officer's suspicion that a driver was smoking marijuana was reasonable). Furthermore, in determining whether reasonable suspicion existed, we have held that inconsistent statements may weigh in favor of finding reasonable suspicion. State v. Sage, 170 N.H. 605, 610-11 (2018).

Here, in concluding that the detective's drug-related inquiries were supported by reasonable suspicion, the trial court considered the fact that the defendant met with a known drug user in a high-crime area, had engaged in conduct consistent with a drug transaction, and had lied when responding to the detective's inquiries. The trial court correctly observed that a trained officer may make inferences and draw conclusions from seemingly unremarkable conduct, and that the court must consider the facts in light of the surrounding circumstances. See McKinnon-Andrews, 151 N.H. at 26. The defendant argues that these facts are too ordinary to give rise to reasonable suspicion of drug-related activity; however, we conclude that, given his experience and training, the inferences and conclusions the detective drew, based upon the facts and circumstances of this case, were sufficient to establish a reasonable, articulable suspicion. Thus, the trial court did not err when it concluded that the detective had reasonable suspicion to expand the scope of the initial traffic stop to include questioning about drugs.

Because we determine that the detective's initial inquiries about where the defendant was coming from and where he met the woman were innocuous and would not reasonably be perceived by the defendant as altering the fundamental nature of the stop, and because the detective had a reasonable suspicion that the defendant was involved in criminal activity when he expanded the scope of the stop to inquire about drugs, we find no violation of the State Constitution. See id. at 25-27. The Federal Constitution provides the defendant no greater protection under these circumstances. See Muehler v. Mena, 544 U.S. 93, 100-02 (2005); United States v. Dion, 859 F.3d 114, 123-28 (1st Cir. 2017). Accordingly, we reach the same result under the Federal Constitution.

Affirmed.

HICKS, BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.

**Eileen Fox,**
**Clerk**

5