NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by email at the following address: reporter@courts.state.nh.us.  Opinions are available on the Internet by 9:00 a.m. on the morning of their release.  The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

10th Circuit Court-Salem District Division
No. 2021-0197


THE STATE OF NEW HAMPSHIRE

v.

JUAN ALBERTO MONEGRO-DIAZ

Argued: February 23, 2022
Opinion Issued: June 14, 2022


John M. Formella, attorney general (Zachary L. Higham, assistant attorney general, on the brief and orally), for the State.


Dixon & Associates, of Lawrence, Massachusetts (Simon Dixon on the brief and orally), for the defendant.


New Hampshire Association of Criminal Defense Lawyers, of Epping (Matthew McNicoll on the brief and orally), as amicus curiae.


DONOVAN, J.  The defendant, Juan Alberto Monegro-Diaz, was charged with driving after his license was suspended in violation of RSA 263:64 (2014). The State appeals an order of the Circuit Court (Stephen, J.) granting the

defendant's motion to suppress evidence obtained as a result of a warrantless seizure of him and his motor vehicle. The State argues that the circuit court erred by ruling that the seizure violated Part I, Article 19 of the State Constitution and the Fourth and Fourteenth Amendments to the Federal Constitution. We conclude that the circuit court properly ruled that the officer who stopped the defendant's motor vehicle lacked reasonable suspicion that the defendant was driving with a suspended license. Accordingly, we affirm and remand.

The following facts are undisputed or are otherwise drawn from the suppression record. At approximately 5:00 p.m. on August 18, 2020, the defendant was driving a motor vehicle that belonged to another individual when a police officer began following him. Based upon his training and experience, the officer believed that the type of vehicle that the defendant was driving indicated that the defendant may have been transporting drugs. The officer did not observe any traffic violations or other motor vehicle infractions. While following the vehicle at approximately thirty to forty miles per hour, the officer searched the license plate number by using his cruiser's mobile data terminal and determined that the vehicle was registered to a middle-aged female. Observing that the male driver did not appear to be the registered owner, the officer continued to search for any prior contacts that the police department may have had with the vehicle. The officer then discovered that, in 2019, an individual subsequently identified as the defendant had been arrested for driving while under the influence (DUI) while operating a vehicle belonging to the same owner. At the time, the officer mistakenly believed that the vehicle involved in the 2019 arrest was the same vehicle that he was following.

Thereafter, the officer reviewed the booking photograph from the 2019 arrest as well as physical descriptions of the defendant's appearance. The officer also learned that the defendant's license was suspended. Based upon his suspicion that the defendant was driving with a suspended license, the officer stopped the vehicle and confirmed that the driver was the defendant. As a result, the defendant was charged with one count of driving after his license was suspended. See id.

The defendant moved to suppress all evidence obtained as a result of the motor vehicle stop — namely, evidence that he was driving after his license was suspended. The defendant argued, among other things, that the motor vehicle stop was contrary to Part I, Article 19 of the State Constitution and the Fourth and Fourteenth Amendments to the Federal Constitution because the officer lacked reasonable suspicion that he was driving with a suspended license. According to the defendant, the evidence presented at the hearing was insufficient to establish that the officer had, in fact, identified the defendant as the driver of the vehicle before initiating the stop.

2

The circuit court held a hearing on the defendant's suppression motion. At the hearing, the officer testified that, although he had never seen the defendant before, he identified the defendant as the operator of the motor vehicle he was following by referencing the booking photograph and physical descriptions of the defendant's appearance. After the officer concluded testifying, the circuit court granted the defendant's motion. Ruling from the bench, the court concluded that the officer's investigative steps — including his use of the mobile data terminal to search the license plate and the defendant's license status — were "appropriate" under the circumstances. The court concluded, however, that the officer lacked reasonable suspicion that the defendant was driving after his license was suspended. The court based this conclusion, in part, upon "some of the arguments" that the defendant made regarding "identification." The court further noted that the officer "was sitting in a car" and "looking at a computer picture" when he attempted to identify the driver and that the officer could not remember whether the defendant was wearing a mask at the time of the identification.

The State moved for reconsideration. In response, the court issued a written order denying the motion and reiterating its ruling that "there was not an articulable suspicion for the stop." The court based its ruling upon "the totality of the circumstances," including its findings that "the car that was pulled over was not unregistered or under suspension, there was no observations of motor vehicle violations, [and] there was not enough evidence presented to establish [the] identity of the Defendant behind the wheel." This appeal followed.

We first address whether the motor vehicle stop violated the State Constitution, relying upon federal law merely to aid our analysis. State v. Ball, 124 N.H. 226, 231-33 (1983). When reviewing a circuit court's order on a motion to suppress, we accept the circuit court's factual findings unless they lack support in the record or are clearly erroneous. State v. Sage, 170 N.H. 605, 610 (2018). We review the circuit court's legal conclusions de novo. Id.

Part I, Article 19 of the State Constitution protects citizens from unreasonable searches and seizures. N.H. CONST. pt. I, art. 19. A traffic stop is a seizure for purposes of the State Constitution. Sage, 170 N.H. at 610. A warrantless seizure is per se unreasonable unless it falls within a recognized exception to the warrant requirement. State v. Dalton, 165 N.H. 263, 265 (2013). One such exception is an investigatory stop. Id. To undertake an investigatory stop that is consistent with the State Constitution, the officer must have reasonable suspicion — based upon specific, articulable facts taken together with rational inferences drawn from those facts — that the particular person stopped has been, is, or is about to be engaged in criminal activity. Id.

To determine the sufficiency of an officer's suspicion, we consider the articulable facts in light of all surrounding circumstances, keeping in mind

3

that a trained officer may make inferences and draw conclusions from conduct that may seem unremarkable to an untrained observer. State v. Joyce, 159 N.H. 440, 446 (2009). A reasonable suspicion must be more than a mere hunch. Id. The articulated facts must lead somewhere specific, not just to a general sense that this is probably a bad person who may have committed some kind of crime. Id. The officer's suspicion must have a particularized and objective basis to warrant that intrusion into protected privacy rights. Id.

Here, the State argues that the circuit court erred as a matter of law by concluding that the officer lacked reasonable suspicion that the defendant was driving after his license was suspended in violation of RSA 263:64. The State argues that, "[b]ased on proper investigative techniques, the officer determined that the driver of the vehicle was the defendant, and that the defendant had a suspended license." The State argues that this suspicion was reasonable in light of "his personal observations, the booking photos and descriptors, and a known association between the defendant and the owner of the [vehicle]."

To support its argument, the State relies upon State v. Richter, 145 N.H. 640 (2000). In Richter, we recognized "the authority of police to run random computer checks of passing vehicle licenses, without suspicion of criminal conduct," explaining that such checks are not searches within the meaning of Part I, Article 19 of the State Constitution. Richter, 145 N.H. at 640-41 (quotation omitted). We further held that an officer's knowledge that the registered owner of a vehicle has a suspended driver's license may provide reasonable suspicion to initiate a traffic stop. Id. at 641-42. We explained that, when an officer "observe[s] nothing that would indicate that the driver was not the owner," it is "reasonable for the officer to infer that the driver was the owner of the vehicle." Id. We further explained that "[s]uch an inference [gives] rise to a reasonable suspicion that the driver was committing a violation of RSA 263:64." Id. at 642.

Here, in light of our holding in Richter, we agree with the State that the officer's use of his mobile data terminal to search the vehicle's license plate was reasonable. See id. at 640-41. We also agree that the officer's subsequent search of the defendant's license status was reasonable. See id. at 641 (holding that "the officer's subsequent check of associated motor vehicle licenses and records" was reasonable because "the state is the very body that issues, controls, and regulates such licenses and records" (quotation omitted)). Based upon these searches, the officer correctly determined that the defendant's license was suspended after he was arrested for DUI and that, at the time of the prior arrest, the defendant was driving a vehicle that belonged to the owner of the vehicle that the officer was following.

Nonetheless, as the State acknowledges, "an additional investigative step was necessary to identify" the defendant as the driver of the vehicle. See Dalton, 165 N.H. at 265 (explaining that "the officer must have a reasonable

4

suspicion . . . that the <u>particular person</u> stopped has been, is, or is about to be, engaged in criminal activity" (quotation omitted; emphasis added)).  The State relies upon the officer's testimony that he identified the defendant by comparing the driver's appearance to the booking photograph and the physical descriptions that he obtained through his mobile data terminal.  During the officer's cross-examination, however, defense counsel pointed out that the officer was following the defendant and that he could not observe several of the physical descriptors such as height, weight, and eye color from his cruiser.  Additionally, in his closing, defense counsel noted that the officer could not remember certain details regarding his identification of the defendant.  Ruling from the bench, the court stated that it was suppressing the evidence based upon "some of the arguments" regarding identification.  In its order denying the State's motion for reconsideration, the court explained that "there was not enough evidence presented to establish [the] identity of the Defendant behind the wheel."

The record demonstrates that, in finding that the officer lacked reasonable suspicion to initiate the stop, the circuit court did not credit the officer's testimony regarding his identification of the defendant.  <u>See</u> <u>In the Matter of Sheys & Blackburn</u>, 168 N.H. 35, 39 (2015) ("The interpretation of a court order is a question of law, which we review <u>de</u> <u>novo</u>.").  Witness credibility is an issue of fact for the circuit court to decide.  <u>See</u> <u>In the Matter of Nyhan & Nyhan</u>, 151 N.H. 739, 743 (2005) ("The [circuit] court, as finder of fact, has the discretion to evaluate witnesses' credibility and may choose to reject their testimony in whole or in part.").  When reviewing an order on a motion to suppress, we defer to the circuit court's credibility determinations unless no reasonable person could have come to the same conclusion after weighing the testimony.  <u>State v. Livingston</u>, 153 N.H. 399, 408 (2006).  We also accept the circuit court's factual findings unless they lack support in the record or are clearly erroneous.  <u>Sage</u>, 170 N.H. at 610.

We conclude that the circuit court's credibility finding is reasonable and supported by the evidence presented at the suppression hearing.  At the hearing, the officer testified that, having never seen the defendant before, he relied solely upon the booking photograph and physical descriptors of the defendant to identify the defendant as the driver.  The officer explained that he identified the defendant by comparing that information with his observations of the driver's rear-view mirror and "different profiles in the [driver's] face," which became visible when the vehicle turned.  The officer also testified that, when this comparison occurred, he was traveling behind the defendant at approximately thirty to forty miles per hour.  When asked how he identified the driver's height, weight, and eye color, the officer responded that he "didn't use those steps."  The officer also admitted that he could not recall what the driver was wearing and whether the driver was wearing a mask.  Based upon this

5

record, we have no basis to disturb the court's factual finding with respect to the credibility of the officer's testimony that he identified the defendant before the stop.

To support its reasonable suspicion argument, the State also relies upon the "known association between the defendant and the owner of [the vehicle]." To the extent that the State argues that this "association" was sufficient to establish reasonable suspicion, we disagree. As explained above, Part I, Article 19 of the State Constitution requires "a particularized and objective basis" warranting "intrusion into protected privacy rights." Joyce, 159 N.H. at 446 (quotations omitted). To hold that the defendant's prior arrest was sufficient to provide reasonable suspicion — without identifying the defendant as the driver — merely because an individual was driving a vehicle that belonged to the same registered owner would contravene this principle.

We therefore conclude that the circuit court did not err by ruling that the officer lacked reasonable suspicion to warrant the stop. We further conclude that, because the officer lacked reasonable suspicion, the circuit court properly ruled that the officer violated Part I, Article 19 of the State Constitution when he initiated the motor vehicle stop. Accordingly, we need not address whether the stop violated the Federal Constitution. See Ball, 124 N.H. at 237 ("Because the seizure was illegal under the New Hampshire Constitution, the court need not reach the federal issue."). The exclusionary rule requires the suppression of any evidence obtained derivatively through a violation of Part I, Article 19 of the State Constitution, see State v. Lantagne, 165 N.H. 774, 778 (2013), or the Fourth Amendment to the Federal Constitution, see Wong Sun v. United States, 371 U.S. 471, 485-86 (1963). Although there are exceptions to the exclusionary rule, see Lantagne, 165 N.H. at 778; United States v. Dent, 867 F.3d 37, 40 (1st Cir. 2017), the State does not argue that any such exceptions apply here. Accordingly, we conclude that the circuit court did not err by suppressing any evidence obtained as a result of the unlawful motor vehicle stop.

Affirmed and remanded.

MACDONALD, C.J., and HICKS, BASSETT, and HANTZ MARCONI, JJ., concurred.

6